CONSOLIDATED
McCALEB, Justice.
Mrs. Monty Tyler Grant underwent abdominal surgery at Touro Infirmary in New Orleans on January 2, 1962. A gauze sponge was left in Mrs. Grant which was surgically removed on August 31, 1962. Mr. and Mrs. Grant then filed this suit for damages against Touro Infirmary and its insurer, Hardware Mutual Casualty Company (hereinafter referred to as Hardware), and also against New Amsterdam Casualty Company (hereinafter referred to as Amsterdam), the liability insurer of the operating surgeon, Dr. Abe Golden, who was not joined as a party-defendant.
Hardware denied the policy it issued to Touro Infirmary provided coverage for plaintiffs’ claims and refused to defend Touro in the suit.
Touro answered, pleading that it is a charitable institution and, therefore, immune from liability in matters such as this. It also pleaded that Dr. Golden, a competent and qualified surgeon, had been in sole *209 charge of the operation; and that, during the operation, its nurses, and all other hospital personnel assisting him, were under Dr. Golden’s sole direction and became his servants and agents.
Amsterdam admitted it had issued a liability policy to Dr. Golden but, denying any fault on his part and averring that he is highly competent, prayed for dismissal of the suit.
Hardware filed an exception of no cause of action and moved for a summary judgment, averring that the policy issued to Touro contained an exclusion of liability clause wherever claim was made based on a charge of fault in the rendering of medical, surgical or nursing services.[1]
Additionally, Touro filed third-party demands against Hardware and Amsterdam. The third-party demand against Hardware claimed, among other things, compensation for the costs, including attorney’s fees, for its defense of the suit. Hardware filed third-party demands against Dr. Golden and his insurer, Amsterdam; and the latter filed third-party demands against Touro and Hardware.
The case was tried by a jury which returned a verdict in favor of plaintiffs against all defendants, Touro, Amsterdam and Hardware, in solido, in the sum of $18,000, and they appealed. The Court of Appeal, Fourth Circuit, (with one judge dissenting in part) reversed the judgment in favor of plaintiffs, insofar as it ran against Touro and Amsterdam and, insofar as it dismissed the third-party claim of Touro against Hardware. The judgment in plaintiffs’ favor was affirmed against Hardware, and there was judgment in favor of Touro on its third-party demand against Hardware in the sum of $6,000. See Grant v. Touro Infirmary, La.App., 207 So.2d 235, 244.
Plaintiffs made application for certiorari, alleging that the verdict of the jury and judgment of the trial court was correct and that the Court of Appeal erred in reversing the judgment in part. Hardware also applied for certiorari, asserting that the Court of Appeal erred in holding (1) that it insured Touro against errors of the surgical nurses in carrying out the sponge counts as part of a surgical procedure ; (2) that it erred in holding that Dr. Golden was not negligent in leaving a surgical sponge in Mrs. Grant’s body; (3) that it erred in holding that Dr. Golden is not legally responsible for the improper sponge count by the surgical nurses; and (4) that it erred in awarding attorney’s *211 fees of $6,000 to Touro. Both applications were granted and the case has been argued and submitted for our decision.
Imprimis, we notice that plaintiffs and Amsterdam are complaining that the Court of Appeal erred in holding that Touro is a charitable, nonprofit institution and, hence, immune from liability for the negligence of its nursing personnel. Counsel for Amsterdam have devoted much space in their brief to this argument, insisting that the doctrine of charitable immunity has outlived its usefulness and that “the public policy considerations which motivated its creation have long since disappeared.”
Although the record shows that the total income of Touro for the year 1962 far exceeded the actual cash value of the charitable services it rendered, there can be no doubt that Touro is a charitable institution within the legally accepted meaning of that term, as it is not operated to make profit but solely to heal the sick and relieve suffering without hope or purpose of getting gain from the services it dispenses.
Ever since 1854 when Touro was founded as a nonprofit corporation for charitable purposes it has operated as such throughout the succeeding years. Touro was recognized in 1922 as an eleemosynary hospital entitled to assert the doctrine of charitable immunity in Jordan v. Touro Infirmary, La.App., 123 So. 726. Its status has not changed in any respect,[2] it being shown that it receives operating and capital funds from the United Fund, Jewish Welfare Fund, City of New Orleans, Federal Government, its medical staff and board of managers and private donations from the community at large. Mr. Walter M. Barnett, President of Touro in 1962, testified that the revenue secured from pay patients is devoted to the care of the indigent and part pay patients.
This Court has in the past inferentially, if not directly, by the refusal of certiorari, sanctioned the doctrine of charitable immunity from tort liability in many cases. See Thibodaux v. Sisters of Charity of Incarnate Word, 11 La.App. 423, 123 So. 466; Jordan v. Touro Infirmary, supra; Messina v. Societe Francaise de Bienfaissance, La.App., 170 So. 801; Jurjevich v. *213 Hotel Dieu, La.App., 11 So.2d 632; D’Antoni v. Sara Mayo Hospital, La.App., 144 So.2d 643; Humphreys v. McComiskey, La. App., 159 So.2d 380; Danks v. Maher, La. App., 177 So.2d 412; and Hill v. Eye, Ear, Nose and Throat Hospital, La.App., 200 So.2d 34.
While the doctrine of charitable immunity has been subjected to criticism in decisions of some states and also by legal text writers, we are not disposed ’ at this time to alter the jurisprudence of our appellate courts on this subject, particularly in view of the fact that the doctrine, as approved by the appellate courts, is of a most restricted nature. It has been held to apply only to beneficiaries of the charity (which includes paying patients), but not to a third-party stranger (see Bougon v. Volunteers of America, 151 So. 797, La.App.Orl.1934) ; it does not apply when corporate negligence can be proven, that is, if it is shown that the institution was negligent in the selection of its employees (see authorities above cited and also 15 Am.Jur. 2d, Charities, Sec. 160, p. 171); and the immunity may not be urged as a defense by the liability insurer of the charity, such defense being personal to the charity itself (Idem).
In view of the above cited jurisprudence, which has been applied and reiterated by our appellate courts for many years, and considering the limited nature of the immunity granted, we are of the opinion that, if any change is to be effected in the law, it should be made by the legislative and not the judicial department.
The primary complaint of Hardware is that the Court of Appeal erred in concluding that its policy insured Touro against errors by surgical nurses in carrying out sponge counts as part of a surgical procedure. In support of this contention, Hardware’s counsel point to an endorsement contained in its general liability policy, denominated “EXCLUSION OF MALPRACTICE AND PROFESSIONAL SERVICES”, providing in part that the policy does not apply to injury, et cetera, due to:
“A. The Rendering Of Or Failure To Render
1) Medical, surgical * * * or nursing service or treatment; * * *
2) Any service or treatment conducive to health or of a professional nature ; * * *
B. The Furnishing Or Dispensing Of * * * Surgical Supplies Or Appliances ; * * * ”
Counsel contend that the making of sponge counts before and during an operation is a service of a professional nature, the rendition of nursing services and the furnishing or dispensing of surgical supplies.
The Court of Appeal held that the counting of sponges prior to and following an *215 operation is not a service of a professional nature but merely administrative in character and the performance of an act which required neither special training nor the exercise of professional judgment. To buttress this finding the court relied upon its prior decision in Danks v. Maher, 177 So.2d 412 (1965), where the court, after citing Jordan v. Touro Infirmary, supra, and D’Antoni v. Sara Mayo Hospital, La.App., 144 So.2d 643, quoted from the concurring opinion in Messina v. Societe Francaise de Bienfaissance, La.App., 170 So. 801, 806, and declared:
“In our opinion the counting of laparotomy squares in the instant case was not an act requiring the exercise of a particular skill or discretion acquired or developed by special training. It was an act which could have been done by an unskilled or untrained employee and it did not involve the exercise of any professional judgment. We conclude that the -incorrect count was not a medical mistake; it was an administrative or nonprofessional mistake from which liability on the part of the hospital can result.”
Adverting to certain evidence in the record- given by the nurses involved, to the effect that when they were undergoing training at the hospital they were given instruction relative to sponge counts and that this was part of the course in operating procedures, counsel proclaim the ruling of the Court of Appeal that the sponge counts did not require professional judgment is manifestly incorrect and contrary to the facts in the case.
In ascertaining whether making a sponge count is a nursing service of a professional nature, it is essential to initially determine whether the exclusion from coverage provisions are applicable to all services performed by doctors, interns, nurses or other hospital personnel even though the act is purely of an administrative nature, as counsel for Hardware contend, or whether the exclusion is confined to those services rendered which are strictly of the sort requiring professional skill and judgment. It was well stated by the Court of Appeal in D’Antoni v. Sara Mayo Hospital, supra, in considering the identical exclusion clause here involved, that:
“It seems to us that in determining whether or not a particular act or failure to act is of a professional nature we should look not to the title or the character of the party performing the act but to the act itself. The raising of the side rail was purely a mechanical act which any unskilled person could perform. It certainly requires no professional training or knowledge.”
In that case, in which we refused certiorari, the plaintiff sued the hospital and its insurer for personal injuries she sustained as a result of falling from her bed in the *217 hospital, contending that the accident was due to the negligence of the hospital nurse in failing to carry out the doctor’s orders in raising the left side rail of her bed from which she fell after oxygen had been administered to her. The insurer of the hospital, as above stated, pleaded the same exclusionary clause as urged herein. But the court rejected the argument, being of the opinion that the failure of the nurse to maintain the side rails of plaintiff’s bed in place “ * * * was not a ‘failure to render medical * * * or nursing service or treatment’ nor was it ‘failure to render any service or treatment conducive to health or of a professional nature.’ ” The court further stated that, “While the initial decision to attach the side rails to the bed may have involved professional judgment, once the attending physician issued the order the professional aspect of it was complete”, and the placing and maintaining of the rails in position was purely mechanical.
In our opinion, the Court of Appeal in the D’Antoni case has clearly analyzed and correctly appraised the exclusionary provisions contained in the policy relied on by counsel for Hardware. It is to be noted, as shown by the caption of these provisions, that the parties intended to exclude from coverage only actions for injuries based on malpractice and professional services rendered by physicians, surgeons, nurses and other professional personnel. Accordingly, the exclusions should be interpreted in such manner as to carry out this evident design and, if any of the special exclusionary provisions could be construed broadly to include services extending beyond the announced purpose of the exclusion, such a construction, under familiar principles of law,[3] is to be avoided.
The counting of sponges was not the rendition of a nursing service. Rather, it ivas a procedure adopted by the hospital and its staff doctors as a safety measure to insure that a sponge would not be left in the body of a patient. Counsel misread the testimony of the nurses when they say that the nurses are instructed with respect to the counting of sponges. The nurses are not instructed in counting. They are instructed in the procedure used by the hospital to prepare and have available sponges in the operating room for use by the surgeon. The simple function of counting the sponges used by the doctor during the operation and also the counting of the number of sponges removed from the patient’s body does not convert the mere mechanical counts into a professional service. It cannot be regarded as the rendition of medical or surgical service or treatment; it is'not a treatment, and it is neither a service of a professional *219 nature nor the furnishing or dispensing of surgical supplies. [4] The surgeon performing the operation inserts the sponges and this is, of course, a medical treatment to absorb bleeding so that the operation may be performed and, when the surgery is over, it is the surgeon who must remove the sponges before closing the incision.
In essence, we approve the reasoning of the Court of Appeal in Danks v. Maher and in this case and hold that an error made by the nurses in the operating room in the counting of the sponges was an act which was not excluded from coverage by the clause relied on by Hardware in the endorsement attached to its policy of insurance.
The next specification of Hardware, that the Court of Appeal erred in holding that Dr. Golden was not negligent in leaving a surgical sponge in Mrs. Grant’s body, has considerable merit in our view.
One of the contentions of Hardware is that Dr. Golden, during the performance of the operation, was in full charge of all the nurses and other medical assistants and, therefore, the doctrine of borrowed employees is applicable. Accordingly, it argued that Dr. Golden was legally responsible for any negligent act of such employees. To support this proposition, Hardware cites Jordan v. Touro Infirmary, supra, wherein it was held that in all matters of operating room procedures the surgeon is responsible and cannot avoid responsibility by delegating part of his function to a nurse.
While it is the general rule that the surgeon is in charge of all personnel in the operating room during the performance of the operation, we do not feel that the evidence justifies the conclusion that, under modern medical operative procedures, it can be said that the borrowed servant doctrine applies in this case. For it is shown by the record that operations performed under modern techniques require team performance, and the nurses and other personnel assisting in the operating room are not at all times under the immediate supervision and control of the operating surgeon so as to bring the case strictly within the “bor *221 rowed servant” doctrine. Rather, as stated in Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137 (1951), it is proper to say that there was a division of control and, in such instances, there is always the presumption that the general employer is liable, and the burden is upon him to show that, with respect to the particular services furnished, “the servant has been lent and is performing only the borrower’s work, * *
In this matter, while it may be said that Touro relinquished to the physician the right to direct the nurses in attendance in the operating room, it cannot be deduced that it renounced all right of control or that these nurses were responding to the operating surgeon’s exclusive control when they made the routine but essential sponge counts prescribed by Touro’s board and medical staff.
Apart from this, however, it is our opinion that Dr. Golden was personally negligent. The Court of Appeal correctly stated that it is shown by the record that, every time a sponge is placed by the surgeon in the patient’s body, it is attached to a twelve-inch metal holder with which it is handled; “ * * * that at no time should the sponge ever be separated from the holder, and that whenever, if it happens, a holder is handed back to one of the nurses and there is no used sponge attached to it, im-. mediately a search is made to locate the sponge which has been disconnected from the holder.” Nevertheless, the court resolved that, under these circumstances. “ * * * it seems impossible that the doctor could have himself left a sponge in the open abdomen and passed back a holder without a sponge attached to it.”
We fail to follow this line of reasoning, as it was not impossible for the doctor to withdraw a holder without a sponge attached to it, and the nurse to receive this holder, without either or both noticing the absence of the sponge. When Dr. Golden was withdrawing the sponges from Mrs. Grant’s body, he had the obligation of ascertaining that each holder had a sponge attached. Failure on his part to do so is negligence for, obviously, there was one holder withdrawn from the patient’s body that did not have a sponge attached thereto.[5]
The general rule, as stated in 70 C.J.S. Physicians and Surgeons § 48, p. 969, is that a surgeon’s failure to remove a sponge or pad before closing an incision may be regarded as negligence per se, and some authorities hold that the surgeon cannot relieve himself from liability for injury *223 to a patient caused by leaving sponges or pads by reliance on a custom or rule requiring the attending nurse to count the sponges or pads used and removed, and on the nurse’s statement as to the count.[6]
Albeit there is authority to the contrary, we are convinced that the general rule is sound. While the nurses of Touro were unquestionably negligent in making an incorrect count of the sponges withdrawn from Mrs. Grant’s body, which was a proximate cause of the accident, we hold that Dr. Golden was guilty of concurrent fault in failing to notice that one of the holders he withdrew from Mrs. Grant's body did not have a sponge attached. Accordingly, we find Hardware, the insurer of Touro, and Amsterdam, the insurer of Dr. Golden, liable in solido for the damages sustained by the plaintiffs fixed by the jury and approved by the Court of Appeal to be the sum of $18,000.[7]
Finally, we direct attention to Hardware’s contention that Touro should not recover from it on the third-party demand the sum of $6,000 which the Court of Appeal awarded as reasonable attorney’s fees for the defense of the case. Under Hardware’s policy it obligated itself to defend the hospital. Its refusal to do so on the ground that its policy excluded coverage was a breach of contract and, hence, it became liable to Touro for reasonable attorney’s fees for the defense of the case. The fact that the principal counsel for Touro candidly testified that he had no agreement with Touro as to fees, and that he did not intend to hold Touro in recompense for his legal services does not, in our opinion, relieve the insurer from responsibility to pay a reasonable fee for the work counsel was required to perform by reason of its default.
For the reasons assigned, the judgment of the Court of Appeal is reversed insofar *225 as it denies plaintiffs’ claim against New Amsterdam Casualty Company, and the judgment is now amended so as to run in favor of Mrs. Monty Tyler, wife of/and John F. Grant against Hardware Mutual Casualty Company and New Amsterdam Casualty Company, in solido, for the full sum of $18,000, with legal interest thereon from judicial demand and costs. In all other respects the judgment of the Court of Appeal is affirmed.
HAMITER, J., concurs in part and dissents in part, being of the opinion that the judgment of the Court of Appeal is correct and should be affirmed.

. Hardware’s motion for summary judgment was sustained by the district court, but its ruling was reversed by the Court of Appeal. That court remanded the matter for the hearing of evidence holding that the issue whether coverage was excluded under the policy was one of fact. See Grant v. Touro Infirmary, La.App., 169 So.2d 574.

. Indeed, Touro fits exactly within the definition of a public charitable institution as stated in 15 Am.Jur.2d, Charities, See. 148, p. 156, which describes such institutions to be:
“A corporation the object of which is to provide a general hospital for sick persons, having no capital stock or provision for making dividends or profits, deriving its funds mainly from public and private charity and holding them in trust for the object of sustaining the hospital, and conducting its affairs for the purpose of administering to the comfort of the sick, without expectation or right on the part of those immediately interested in the corporation to receive compensation for their own benefit, is a public charitable institution."

. Articles 1945, 1946, 1948, 1955 and 1957, Civil Code; Corporation of Roman Catholic Church of Eunice v. Royal Ins. Co., 158 La. 601, 104 So. 383; Albritton v. Fireman’s Fund Ins. Co., 224 La. 522, 70 So.2d 111 and cases tliere cited.

. In addition to the rulings of the Fourth Circuit Court of Appeal in D’Antoni v. Sara Mayo Hospital and Danks v. Maher, 40 Am.Jur.2d, Hospitals and Asylums, See. 29, pp. 872 and 873, states:
“A hospital is liable for the negligence of its nurses in performing mere ad- • ministrative or clerical acts that, though constituting a part of the treatment prescribed by a physician or surgeon, do not require the application of his specialized technique or understanding.”
It has also been held in other jurisdictions that a sponge count is a mere administrative act. See Buzan v. Mercy Hospital, Inc., (Fla.App.) 203 So.2d 11; Rural Educational Asso. v. Bush, 42 Tenn.App. 34, 298 S.W.2d 761; and French v. Fischer, 50 Tenn.App. 587, 362 S.W.2d 926.

. In this connection, it is well stated by the dissenting judge:
“While the surgeon cannot be required to keep a count record of sponges used and removed, he is bound to notice the absence of the sponge if a holder which is removed has no sponge attached. The failure to notice this evidences actual negligence on the part of the surgeon. * * * ” See 207 So. 2d at page 244.

. See Ales v. Ryan, 8 Cal.2d 82. 64 P.2d 409; Key v. Caldwell, 39 Cal.App.2d 698, 104 P.2d 87; Davis v. Kerr, 239 Pa. 351, 86 A. 1007, 46 L.R.A.,N.S., 611; Barnett’s Adm’r. v. Brand, 165 Ky. 616, 177 S.W. 461; Spears v. McKinnon, 16S Ark. 357, 270 S.W. 524; Walker v. Holbrook, 130 Minn. 106, 153 N.W. 305; Paro v. Carter, 177 Wis. 121, 188 N.W. 68; Ault v. Hall, 119 Ohio St. 422, 164 N.E. 518, 60 A.L.R. 128; Punk v. Bonham, 204 Ind. 170, 183 N.E. 312; Palmer v. Humiston, 87 Ohio St. 401, 101 N.E. 283, 45 L.R.A.,N.S., 640; Armstrong v. Wallace, 8 Cal.App.2d 429, 47 P.2d 740; Rule v. Cheeseman, 181 Kan. 957, 317 P.2d 472; Winchester v. Chabut, 321 Mich. 114, 32 N.W.2d 358; Jackson v. Hansard, 45 Wyo. 201, 17 P.2d 659; Stawicki v. Kelley, 113 N.J.Law 551, 174 A. 896, aff’d 115 N.J.Law 190, 178 A. 754; McCormick v. Jones, 152 Wash. 508, 278 P. 181, 65 A.L.R. 1019; and French v. Fischer, 50 Tenn.App. 587, 362 S.W.2d 926.

. We observe that Amsterdam alternatively contends that, should we find Dr. Golden exercised a measure of control over Tuoro's nurses, then it is entitled to full indemnity against Touro and Hardware on its third-party demand as Dr. Golden was only passively or constructively at fault. Since we find Dr. Golden personally negligent, there is no merit in the claim.