325 So.2d 395 (1975)
Seymour X. GUILBEAU, Plaintiff and Appellee,
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant and Appellant.
No. 5277.
Court of Appeal of Louisiana, Third Circuit.
December 24, 1975.
Rehearing Denied January 28, 1976.
Writ Refused March 12, 1976.
*396 Pugh, Boudreaux & Gachassin, by Charles J. Boudreaux, Lafayette, for defendant-appellant.
Thompson & Perrin, by Michael F. Thompson, Lafayette, for plaintiff-appellee.
Before MILLER and WATSON, JJ., and CUTRER, Judge ad hoc.
CUTRER, Judge ad hoc.
Defendant, St. Paul Fire and Marine Insurance Company, appeals from a judgment granting recovery in favor of plaintiff, Seymour X. Guilbeau, for injuries allegedly sustained by him when a laparotomy pad was not removed from him during surgery performed on him at Lafayette General Hospital. We affirm the judgment.
Plaintiff filed suit against defendant for damages sustained by him as a result of the alleged negligence of defendant's insured, a surgeon who performed a right colectomy on plaintiff on March 3, 1973. Plaintiff also asserted a claim against Lafayette General Hospital and its insurer in connection with the same incident, which claim was settled. The record indicates that plaintiff was referred to the surgeon in question, Dr. Edgar Breaux of Lafayette, by his physician, Dr. William Bernard, for a suspected abdominal malignancy. The plaintiff was scheduled for surgery to be performed by Dr. Breaux, assisted by Dr. Bernard. The presence of cancer of the cecum was confirmed, and evidence of the spreading of the malignancy required Dr. Breaux to perform an extended surgical procedure requiring removel of some of the intestines and other tissue, together with repairs of the intestinal tract. The operation required the insertion of a large number of instruments, sponges and laparotomy pads in the plaintiff's abdominal cavity. Through error a laparatomy pad was left in the plaintiff's abdomen which caused severe pain and suffering for him over a period of time. Prolonged infection and drainage from the surgical incision resulted. It was necessary for plaintiff to undergo two subsequent operations, first to remove the laparotomy pad and later to repair an incisional hernia resulting from the second surgery.
The evidence presented at trial indicated that as part of the preparation for surgery two of the nurses on the hospital surgical team counted all of the instruments, sponges, pads, etc., that were prepared and which might be used during the surgical procedure. Part of this counting procedure required that one of the nurses record the count for each item on a special sheet of paper at the time the initial count was made. At the conclusion of the surgical procedure and before the surgeon began closing the surgical incision, the two nurses jointly conducted a count of all the instruments, sponges, pads, etc., which had been used during the surgical procedure and removed by the surgeon together with those items which were on the surgical table but which had not actually been used during the surgery. This count was recorded as it was made on the same sheet of paper but in a different column. This count agreed exactly as to all items with the original count which had been made prior to the surgery. This count was verbally reported to the surgeon as being correct. These were the only counts which were indicated on the sheet of paper used to record the count, which paper was introduced into evidence at the trial. The testimony, however, indicates that additional counts were made by the two nurses and that none of these counts indicated that any items were missing. As noted above, this surgery was performed on March 3, 1973. The plaintiff was discharged on March 15, 1973.
The evidence further indicated that plaintiff continued to feel bad after the *397 operation, and in May a liver scan showed metastasis to the left lobe of the liver. He experienced nausea and vomiting, and was admitted to the hospital on June 3, 1973. At that time he had dark drainage from the surgical wound and there was evidence of small bowel obstruction. Xray examination indicated a foreign body in the right iliac region of the pelvis, which appeared to be a sponge. Surgery was performed on June 5, and it was discovered that a laparotomy pad had been phagocytized by the small bowel and the small bowel was attempting to exude it through the intestinal lumen. He also sustained a wound infection which was treated following this second operation. The plaintiff was discharged on July 4, 1973. He was again admitted to the hospital on August 18, 1974, for repair of an incisional hernia. The hernia was closed using wire sutures. He was discharged on August 30, 1974.
Following the presentation of the evidence the trial judge rendered judgment in favor of plaintiff, finding that Dr. Breaux had been negligent in failing to remove the laparotomy pad from plaintiff during the initial operation. An award for his pain and suffering in the amount of $36,000.00 was determined to be fair by the trial judge. However, the trial judge found that defendant was entitled to a reduction of one-half of this amount in view of the fact that plaintiff had compromised and released one of the joint tortfeasors, the Lafayette General Hospital. Costs were assessed against the defendant, and expert fees for the four doctors who testified were set at $50.00 each.
This appeal does not involve a factual dispute. It is admitted by defendant that error was committed when the pad was left in the plaintiff's abdominal cavity during. the surgery. It is defendant's contention, however, that Dr. Breaux should not be blamed for the damages sustained by the plaintiff because he met the standard of professional care of the locality and exercised the degree of skill, care and judgment which is ordinarily exercised by similar practitioners in the area. Evidence to support this contention was presented in the form of testimony by experts which indicated that the general practice in the area was to rely on the "sponge count" of the nurses and a visual inspection of the area of surgery prior to closure to prevent the error committed in this case.
Defendant cites Meyer v. St. Paul-Mercury Indemnity Company, 225 La. 618, 73 So.2d 781 (1954) as setting forth the rule which controls the determination of questions of negligence on the part of surgeons:
"As a general rule it is his duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill to the case." 73 So.2d at 782.
In addition, defendant argues that under Roark v. Peters, 162 La. 111, 110 So. 106 (1926), the surgeon is required to do no more than was done in the present case to exonerate himself from liability when a sponge or pad is left in the patient following surgery.
Plaintiff argues that the controlling rule is set forth in Grant v. Touro Infirmary, 254 La. 204, 223 So.2d 148 (1969). In that case suit was brought against the hospital, its insurer and the operating surgeon's liability insurer for damages sustained by the plaintiff as a result of a sponge being left in her body following surgery. In finding personal negligence on the part of the operating surgeon, the Supreme Court set forth the following statement of law:
"The general rule . . . is that a surgeon's failure to remove a sponge or pad before closing an incision may be regarded as negligence per se, and some authorities hold that the surgeon cannot relieve himself from liability for injury to a patient caused by leaving sponges or pads by reliance on a custom or rule *398 requiring the attending nurse to count the sponges or pads used and removed, and on the nurse's statement as to the count.
"Albeit there is authority to the contrary, we are convinced that the general rule is sound." 223 So.2d at 154-155.
In Grant, the Supreme Court was faced with the fact that a sponge had been left in the plaintiff's body following surgery. The fact that it had been placed there during surgery by the surgeon and not removed by him before closure constituted negligence per se on his part, and the fact that he had complied with the "community standard" in relying on the nurse's sponge count did not exonerate him. In the present case we are faced with the same situation. A laparotomy pad was placed in plaintiff's body by the surgeon during surgery and was left there following surgery, and defendant attempted to show that the procedure used by the surgeon to prevent leaving any sponges or pads in the patient was in complete accord with the community practice. Grant requires that we find the operating surgeon negligent per se. This is the latest expression of our Supreme Court on the subject and we are obliged to follow it.[1]
For the reasons assigned, the judgment of the trial court is affirmed at defendant-appellant's costs.
Affirmed.
MILLER, J., dissents and assigns written reasons.
MILLER, Judge (dissenting).
When this 67 year old plaintiff sought medical attention he was extremely anemic and required and received immediate surgery. He had a grade three (on a scale of four) cancer of the colon which had spread to the lymph nodes. To increase Mr. Guilbeau's chance for survival surgery was required, and the odds for survival with surgery were only fifty percent. At trial two years after his first surgery, plaintiff was in good healtha testimonial to the skill of the surgeon and to the efficacy of his judgment decisions made during the course of the complicated and difficult two hour procedure.
The majority did not find it relevant to review the impressive testimony by which defendant surgeon established his freedom from negligence.
It is respectfully submitted that Louisiana does not follow the rule that a surgeon's failure to remove a sponge or pad before closing an incision must be regarded as negligence per se. It may be, but not must. And the majority has not recognized this distinction.
The trial judge properly held the hospital staff negligent in reporting to the surgeon they had properly counted the 177 instruments, pads, etc., used during the complicated surgical procedure. They confessed their negligence and settled plaintiff's claim.
The trial judge did not assign written reasons but his impression of the case is indicated by one of his questions: "Doctor, just how in the world is it that a surgeon can leave something in the body of a human being?" Tr. 151. It appears he too followed the simple rule established by the majorityif a pad is left in the patient, the surgeon is liable.
Dr. Breaux's skill as a competent and experienced surgeon was established beyond peradventure.
The procedure established and followed by all hospital personnel (to account for all items used in the patient's body during surgery) was identical to that followed in Mayo Clinic, in hospitals in Houston, Texas, and elsewhere. So far as the surgeon is concerned there were no deviations in this case from the standard procedure. As to the patient, the hospital staff was negligent and the patient has recovered for this negligence.
*399 According to this record surgeons never participate in or supervise these counts. A surgeon's attempt to do so would be contrary to accepted medical practice and not in the patient's best interest. In Mr. Guilbeau's case, it might well have jeopardized his chance for survival.
The extensive cancer had almost completely obstructed the bowel. During the course of surgery, Dr. Breaux was required to determine the extent of the cancer, what organs or tissues should be removed, and the best method of accomplishing this in order to re-establish the intestinal tract. Before touching the cancerous intestines and lymph nodes, he had to probe the apparently healthy tissue to make a judgment as to how much should be excised. His ultimate decisions were confirmed by the pathologist's report obtained during surgery. Dr. Breaux had to remove the entire right side of the colon and a portion of the small intestine.
Twenty of the 177 items used inside the patient's body were laparotomy pads used to wall off healthy organs and tissues. The pads are soaked before being inserted in the patient. They move between spaces in the twenty-two feet of small bowel, around the stomach, the spleen, and down in the pelvis. The lap pads get smaller and smaller and almost invisible as they become wet and perform their mission. During long and complicated surgery it is possible for the back and forth movement of the bowels (caused by movement of the diaphragm) to cause a lap pad to gravitate to an area other than where it was placed.
Some matters requiring the surgeon's undivided attention involve proper tying off the bowel above and below the cancer to prevent spread of cancer cells; controlling the bleeding from major blood vessels encountered in this area; attempting to prevent bowel contents and lymph node material from entering or remaining in the area of surgery; protecting the healthy organs from bruise or injury; excising the diseased organs and tissue and suturing to approximate the ends of the remaining bowel; checking to make sure the joining together of the bowel ends is adequate and free of leaks and bleeding; cleaning out the cavity to remove all possible contamination; remaining informed about the patient's vital signsblood pressure, pulse, and respiration; keeping informed as to the pathologists reports on tissue sent for examination; and other matters essential to the patient's welfare.
Before closing the surgery, the hospital staff twice reported to Dr. Breaux they had obtained a correct count. All counts having been reported as correct, the evidence uniformly establishes it would have been medically improper for the surgeon to have made an extended, time consuming search of all crevices. To make such a search would have seriously jeopardized Mr. Guilbeau's life.
Such a search could spread germs from the colon, cancer cells from the diseased to the healthy tissue, and otherwise injure the healthy organs. In view of Mr. Guilbeau's malignant disease, the two hour open colon surgery on this 67 year old patient, and the report of hospital personnel that all counts were correct, an extended and unnecessary search under and around the intestines, stomach, spleen, liver, and pelvic area, was contra-indicated. Good medical practice was followed in this case.
It is respectfully submitted that Mr. Guilbeau's best chance for survival was served by the surgeon's reliance on the accuracy of the hospital staff's count. The majority holding may require the medical profession to revise their standard of care to elevate the search for lap pads to a higher priority than saving the patient's life. Be it here recorded that I come down on the side of saving the patient's lifeand that is exactly what Dr. Breaux accomplished.
I understand the majority to consider themselves bound by a rule (quoted by the Supreme Court from Corpus Juris Secundum) that "a surgeon's failure to remove a *400 sponge or pad before closing an incision may be regarded as negligence per se." [Emphasis added.] Grant v. Touro Infirmary, 254 La. 204, 223 So.2d 148 at 154-5 (1969). The majority has read may be to mean must be. I respectfully submit the Supreme Court applied the rule as written "may be regarded as negligence per se." After stating the rule, the court carefully points to the basis for finding the surgeon negligent. The four by four inch gauze sponge used to soak up blood was attached to a metal holder. The surgeon removed the metal holder and should have noted (but failed to note) the sponge was not attached when he handed the holder to the nurse. No metal holder could be attached to the twenty lap pads used in Mr. Guilbeau's surgical procedure.
Where the evidence establishes, as it does here, that in order to increase the patient's chance for survival, the surgeon must depend on those properly trained and uniformly assigned personnel to count laparotomy pads, the hospital staff's negligence in making and reporting an erroneous count should not, of itself, establish the surgeon's negligence.
This surgeon proved he was not negligent. He is being held liable for the operating room personnel's faulty count.
I respectfully dissent.

ORDER
The Application for Rehearing herein having been duly considered:
It is ordered that a Rehearing be, and the same is hereby, denied.
MILLER, J., votes for a rehearing and assigns reasons.
MILLER, Judge.
I vote to grant the application for rehearing for the reasons stated in my dissent and for these additional reasons.
Even in cases where the rule of negligence per se is applied, a breach of duty must be found. Heretofore, the physician has been required to exercise the degree of skill and care utilized by other members of his profession in his community. The majority pretermits consideration of that issue. They do not reject the uniform testimony that the surgeon used that degree of skill and care, but, on finding the presence of the foreign body, find him liable without regard to the fact that he established his freedom from fault. I respectfully submit this is not application of the doctrine of negligence per se, but rather a theory of strict liability based on the finding he has an absolute duty to remove laparotomy pads even though the surgeon has been advised by competent assistants in charge of the count that all laparotomy pads have been removed. Under the rule of this case, even the most extraordinary degree of skill and caution, even the most unusual surgical procedures performed under adverse circumstances, will not serve to exculpate the surgeon.
There is no precedent in our law for applying such a strict standard of liability to a surgeon. It is wholly inappropriate since the essence of his work is skill and caution, not a mechanical disassembly and reassembly of components.
The burden of res ipsa was completely satisfied in this case. Someone was negligent. The trial court found the hospital personnel were negligent and they settled the claim. On the facts of this case, the res ipsa doctrine is improperly applied to the surgeon. Plaintiffs presented no evidence showing a want of skill or care by the surgeon. His observance of the accepted precautions was established.
I respectfully submit the surgeon cannot be held liable on any theory of negligence, and that surgeons should not be subjected to the doctrine of strict liability.
I would grant the application for rehearing.
NOTES
[1] See also Chappetta v. Ciaravella, 311 So.2d 563 (La.App. 4th Cir. 1975), writ refused, 313 So.2d 841 (La.1975).