367 So.2d 871 (1978)
Mrs. Margaret HOLLOWAY, wife of and Robert E. Holloway
v.
SOUTHERN BAPTIST HOSPITAL, Commercial Union Insurance Company of New York, the Continental Insurance Company and James M. Freeman.
No. 8797.
Court of Appeal of Louisiana, Fourth Circuit.
October 30, 1978.
On Denial of Rehearing January 16, 1979.
*872 Lawrence J. Smith, Michael A. Villa, Levy & Smith, New Orleans, for plaintiffs.
Monte J. Ducote, New Orleans, for defendant Southern Baptist Hospital.
Charles A. Boggs, Montgomery, Barnett, Brown & Read, New Orleans, for defendant Commercial Union Ins. Co.
Lawrence D. Wiedemann, New Orleans, for defendants Dr. James M. Freeman and Dr. Leslie Guidry.
Lilian M. Cohen, Charles R. Maloney, New Orleans, for defendant Mrs. Earline Karl.
Conrad Meyer, IV, Baldwin & Haspel, New Orleans, for defendant Mrs. Lola Breedlove Moore.
H. Martin Hunley, Jr., Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, for defendants Dr. James A. Rogers, Dr. Dermit L. Roux, New Orleans Anesthesia Associates and St. Paul Fire & Marine Ins. Co.
Before REDMANN, STOULIG and SCHOTT, JJ.
Per Curiam On Denial of Rehearing January 16, 1979.
REDMANN, Judge.
Plaintiff wife had healthy arms when she entered an operating room for heart surgery. By the time she returned to her room after a week's stay in recovery room and surgical intensive care unit, she was experiencing left arm pain which heralded a left ulnar neuropathy with causalgia. Despite major surgical efforts at ulnar nerve relocation and autonomic nerve system excisions (including removal of her uppermost rib), she remains afflicted today with the neuropathy and causalgia which have caused atrophy and disability of the left arm.
Plaintiff husband and wife now appeal from the rejection on the merits of their action for damages against hospital, surgeons, anesthesiologists and nurses.
The ultimate question is whether plaintiffs have borne their burden of proving that some fault within La.C.C. 2315 by some defendant caused the injury. Because no direct evidence established causative fault (as plaintiffs concede), the question becomes whether circumstantial evidence establishes causative fault as, more probably than not, the source of the injury. As plaintiffs phrase it, the question is whether Res ipsa loquitur applies.
*873 McCann v. Baton Rouge Gen. Hosp., La.1973, 276 So.2d 259, 262, establishes that a cause of action is stated by a petition alleging that "the body of the injured [plaintiff] was in the exclusive custody of the several defendants . . . [and] while under anesthesia [or heavy sedation] received injuries to a part . . . not involved in the surgery [in the nature of] untoward or unusual occurrences during the time of medical supervision." At trial, unless other evidence exculpates them, proof of the cited circumstances will support the res ipsa loquitur inference that the medical custodians were somehow at fault; see Larkin v. State Farm M. A. Ins. Co., 1957, 233 La. 544, 97 So.2d 389.
The trial judge's reasons for judgment expressly found "that all of the parties [defendant] involved used the highest degree of care and standard necessary for the protection of the patient." The reasons lamented, however, Meyer v. St. Paul-Mercury Indem. Co., 1954, 225 La. 618, 73 So.2d 781, "and its doctrine as to the inapplicability of res ipsa loquitur to most malpractice cases". We reverse because the trial judge erred in founding his judgment on the belief that the circumstantial evidence rule of res ipsa loquitur is inapplicable. The rule applies here.
Meyer's "interpretation of the law as to a physician's duty to his patient", already weakened by McCann, was overruled subsequent to the judgment appealed from, in Ardoin v. Hartford Acc. & Indem. Co., La. 1978, 360 So.2d 1331. Ardoin expressly condemned the "locality rule" which prevented liability in Meyer. The present case is unconcerned with the locality rule (save as to nurses, a question we pretermit). There is no dispute over the duty owed by hospital and other medical personnel not to so pull the arm of an anesthetized or sedated patient as to damage the ulnar nerve by stretching, or not to allow the sedated patient to remain for several hours in one position, as to damage the ulnar nerve by prolonged compression. Disputed is whether plaintiffs proved that duty was breached, and by whom. We conclude that the evidence legally establishes that some breach of that duty was the mechanism of plaintiff wife's injury.
The test of proof is stated by Boudreaux v. American Ins. Co., 1972, 262 La. 721, 264 So.2d 621, 636:
It suffices if the circumstantial proof excludes other reasonable hypotheses only with a fair amount of certainty, so that it be more probable than not that the harm was caused by the tortious conduct of the defendant. . . . [By] the principle of "res ipsa loquitur" (the thing speaks for itself) . . . where properly applied, the circumstantial evidence indicates that the injury was caused by some negligence on the part of the defendant, without necessarily proving just what negligent act caused the injury.
That test is met by this record. Perhaps the strongest evidence for plaintiff is that from Dr. Richard W. Levy, a neurosurgeon, while that for defendants is from Dr. Robert J. Schramel, a thoracic and cardiovascular surgeon. Even Dr. Schramel agrees that the most probable explanation of plaintiff wife's problem is a stretching or compression of the ulnar nerve. Although 15% of all similar cases are from other, undetected causes, cases arising during hospitalization are not often from undetected cause. Dr. Schramel, however, would not rule out as a cause a stretching or compression of the brachial plexus (which includes the ulnar nerve) at the thoracic outletan uncommon but not necessarily fault-implying result of spreading the ribs apart after cutting through the sternum vertically to allow access for heart surgery. Dr. Schramel, who never examined the patient, discounts her causalgia as causalgia-like symptoms, while Dr. Levy relies on his clinical diagnosis of causalgia from its objective signs, and especially upon the limitation of problems to the area served by the ulnar nerve branch (distal to the thoracic outlet) rather than all areas served by the brachial plexus, (a) to practically eliminate as a cause thoracic outlet syndrome, (b) to define a stretching injury as statistically much more probable than a compression injury, and (c) to *874 place the situs of the ulnar nerve injury along the nerve between elbow and armpit (rather than at the elbow, making improbable as a cause some prolonged compression at the elbow groove, as during the six-hour surgery).
The 3000-page transcript and the depositions contain many medical opinions, usually questioned and explained in depth. We eliminate discussion of other possible causes such as a severe blow, which would have caused bruising not present, and declare that the great bulk if not the unanimity of the medical evidence supports the conclusion that, more probably than not, plaintiff wife's injury was caused by a severe stretching or prolonged compression of the ulnar nerve.
We may here note the distinction between ulnar neuritis and ulnar neuropathy with causalgia. The neuritis is a transitory, inflammatory condition which occurs with some frequency as a result of even moderately prolonged compression of the nerve. The neuropathy is a permanent degenerative condition, far more seldom seen. Much testimony (including some by Dr. Schramel) spoke of a neuritis, and assigned innocent causes, such as lying in bed with one's arms folded over the abdomen. We find the clear preponderance of the evidence is that these innocent possibilities would not explain plaintiff wife's condition of neuropathy with causalgia.
Surgeons and anesthesiologists are eliminated as possible causes because their work and positioning of plaintiff wife on the operating table with arms at her sides did not affect the left ulnar nerve. (Even blood pressure cuff and intravenous injection were on the right arm.) Although an anesthesiologist probably assisted in lifting the patient post-operatively from the table to the roller-bed for the trip to the recovery room, he would have lifted the patient's head, and not her side. It is thus not established as more probable than not that surgeons or anesthesiologists severely stretched or compressed plaintiff wife's ulnar nerve.
Damage-causing stretching or compression of the nerve can most easily occur while one is anesthetized (or sedated) and the body's muscles are relaxed and protective reactions to pain are eliminated (or reduced). The unsedated person whose arm is pulled pulls back, preventing stretching; one whose arm is compressed (to the point that fingers tingle) moves his arm, relieving the compression. Plaintiff wife was anesthetized when moved from operating room to recovery room, and then heavily sedated by 36 (sic) doses of morphine during the next 44 hours before her removal to the intensive care unit, where morphine usage was tapered off but she was markedly disoriented much of the time during her five-day stay. After that time, within an hour of her return to her room, her complaint of arm pain is first recorded in the nurses' notes. (Relatives' testimony of earlier complaints, and of rubbing left arm and little finger, may not have been noted by the nurses or may have been deemed referred pain from the incision; there is, however, one earlier note of arm and chest pain.) During that eight-day aftercare period, doctors did visit and prescribe medications, but the physical custody of plaintiff wife was in the nurses and orderlies employed by defendant hospital.
Even if we do not accept Dr. Levy's testimony (relying on the causalgia) that stretching is far more probable than compression as the cause of the injury, we cannot escape concluding that, more probably than not, one or the other occurred while plaintiff was unconscious or sedated, in the custody of the employees of defendant hospital. The more probable (according to Dr. Levy), a stretching, could have occurred only if, e. g., the patient were lifted by the arm when unable or virtually unable to sense and react to pain, and it would have breached the hospital's duty of reasonable nursing care to so pull on a patient's arm to lift her or for any other reason. The other possibility, a prolonged compression, could only have occurred if the hospital had similarly breached its duty of reasonable nursing care by placing the patient in a position in which compression could occur *875 and leaving her in that position for several hours, rather than turning with a reasonable frequency (such as that reflected by the intensive care unit nurses' notes).
Because certain family members did visit plaintiff wife in recovery and intensive care, the possibility exists that one of them could have pulled her arm while she was heavily sedated. However, the testimony is that they were only allowed to visit a few minutes at a time and that they were not permitted to be close to the patient. This testimony makes this possibility so remote that we conclude that, more probably than not, no family member caused plaintiff's nerve injury.
Under all of the evidence including the circumstantial evidence in this record, the res ipsa loquitur inference is available against the hospital that one (or more) of its employees caused the injury to plaintiff wife. The evidence withstands the test of Boudreaux, supra.
Quantum of damages includes past medical expenses of $12,654.62, future medical expenses we estimate at $10,000, and general damages for all phases of disability and pain and suffering we fix at $50,000.
Reversed as to Southern Baptist Hospital against whom there is judgment for the plaintiff husband for $12,654.62 with interest from judicial demand and all costs (save those expended against or by other defendants) and for the plaintiff wife for $60,000, with interest from judicial demand; otherwise affirmed.

ON APPLICATION FOR REHEARING
PER CURIAM.
Granting limited rehearing on the omitted issue of liability of the hospital's two insurers, we cast only Underwriters at Lloyd's of London, the hospital's professional liability insurer against negligence in rendering or failing to render professional services.
Lloyd's argues from Grant v. Touro Infirmary, 1969, 254 La. 204, 223 So.2d 148, that the nurses' acts or failure to act was not negligence in professional services. Grant held that an operating room nurse's counting of sponges (to assure none remained inside the patient) was not a "nursing service" nor a "service or treatment conducive to health or of a professional nature" and was therefore not excluded from coverage by a general liability policy's exclusory clauses. The same exclusory clause is present in the general liability policy issued by Commercial. Whatever one's view of Grant, Grant does not control here because here the services were performed or to be performed upon the body of the patient. Lloyd's is liable and Commercial's exclusion applies.
Amended to cast Underwriters at Lloyd's of London in solido with its insured.