This is an appeal by Dr. P.B. Ravi from a judgment for the plaintiff, Carolyn Sue Williams, in a medical malpractice action. We affirm.
On April 1, 1985, Carolyn Williams went to Dr. C.H. Paine's medical clinic, complaining of vaginal bleeding and back and pelvic pain. Dr. Paine recommended a hysterectomy. On April 2, 1985, Williams was admitted to D.E. Jackson Memorial Hospital, due to the severity of her pain. Williams signed a consent form authorizing Dr. P.B. Ravi to perform the hysterectomy the following day.
On April 3, 1985, Dr. Ravi performed the surgery, with Dr. Paine assisting. The scrub nurse and circulating nurse were supposed to keep a correct count of the sponges used during the operation. One of the attending nurses informed Dr. Ravi that all of the sponges had been accounted for, and the operation was completed.
On April 12, Williams was experiencing abdominal pain and emergency surgery was performed. One of the surgical sponges had been left in the plaintiff's abdomen during the previous operation.
Williams brought this action against Drs. Paine and Ravi and the D.E. Jackson Memorial Hospital, alleging negligence in leaving the sponge inside her abdomen and in recommending a procedure (the hysterectomy) that, she said, was not medically necessary. The complaint alleged that the defendants failed to exercise the degree of care required by law of physicians and hospitals in administering medical care.
The court entered summary judgment for Dr. Paine, and a pro tanto settlement was reached between Williams and D.E. Jackson Memorial Hospital. The case against Dr. Ravi proceeded to trial, and the jury returned a verdict for Williams in the amount of $20,000.00. The court entered a judgment in that amount.
On appeal Dr. Ravi first contends that the trial court improperly charged the jury on the law to be applied when a foreign object is left in a patient's body by a physician. He argues that the trial court incorrectly charged the jury 1) that the failure to remove from a patient's body sponges placed there during an operation is negligence per se and 2) that such conduct falls beneath the standard of care as a matter of law.
The portion of the court's charge to which Dr. Ravi objects was as follows:
 "Now, ladies and gentlemen, the next order that they raised in issue has to do with the sponges. I'm going to give you a written charge in a few minutes about that, but as I understand the law in the State of Alabama, there is no issue. The Supreme Court of this State says it is the doctor's responsibility to ensure that the sponges that are used are not retained when the abdominal cavity or cavity is closed, so I am going to charge you as a matter of law that that is prima facie evidence of a negligent or negligence by a physician or surgeon in carrying out those duties and falls beneath the standard of care. Now, that doesn't necessarily follow, but that means that you would automatically make an award because there is other findings. Again, you've got to find the fact that the sponge was there, and that as a direct and proximate consequence of that she has suffered injuries and damages for *Page 1376 
which she is entitled to recover monetary damages."
Considering the entirety of the court's charge to the jury, we hold that it was not so incorrect or confusing as to constitute reversible error. Under Alabama law, as the trial court correctly charged the jury, it is the physician's responsibility to remove all sponges from inside the patient before closing the abdominal incision. Powell v. Mullins,479 So.2d 1119 (Ala. 1985).
In arguing that the trial court's statement in charging the jury that "there is no issue" was erroneous, Dr. Ravi asserts that there was expert testimony that the failure to remove all sponges after a search and after receiving information from a nurse that the sponge count was correct does not fall below the standard of care. The standard of care to be applied in regard to sponges or other foreign objects that could be left inside the patient after surgery has been established by several recent cases.
The physician bears the responsibility for removing sponges from the patient's body and cannot, by delegating the task of counting, relieve himself from liability for injury to a patient caused by leaving a sponge in the body. The fact that all physicians engaged in practice within the defendant's same general neighborhood routinely delegate the task of accounting for surgical sponges and rely on counts given them by nurses or other assistants does not relieve them of liability when a sponge is left inside a patient's body.
The reason for this rule is stated in Powell v. Mullins,479 So.2d 1119 (Ala. 1985), as follows:
 "Unquestionably, it was the defendant's responsibility to remove all sponges from inside the plaintiff before closing the abdominal incision. This rule is stated generally at 61 Am.Jur.2d, Physicians and Surgeons, etc., § 258, p. 397 (1981):
 " '§ 258. — Leaving foreign substance in wound.
 " 'A surgeon undertaking to perform an operation requiring the placing of sponges in the incision does not complete his undertaking until the sponges are properly removed. . . .'
 "Under our cases, a failure to remove sponges, needles, etc., which are placed inside the patient during the operation constitutes prima facie evidence of negligence. See Sellers v. Noah [, 209 Ala. 103, 95 So. 167 (1923),] and Parrish v. Spinks, [284 Ala. 263, 224 So.2d 621 (1969)]. The responsibility to remove the sponges was that of the doctor and not that of the nurses assisting him. He exercised exclusive control over the sponges from the time he placed them inside the plaintiff until he removed them. The mere fact that the defendant delegated the task of counting the sponges, once he had removed them from the patient, does not, in any way, relieve the defendant of his responsibility to remove them in the first instance. He had the duty and responsibility of removing all the sponges. The nurses' responsibility of counting them afterward amounts to only an added precaution taken by the defendant to help insure that he had properly performed his duty.
 "The general rule with respect to the 'sponge nurse' is stated and explained at 61 Am.Jur.2d at 399:
 " 'While the custom or usage of having a "sponge nurse" account, both before and after a surgical operation, for all sponges used during the operation has been approved by some courts, it is generally held that surgeons cannot relieve themselves from liability for injury to a patient caused by leaving a sponge in the wound after an operation, by the facts that such custom or usage prevails in the community, and that they followed and relied on such count as conclusive that all sponges had been accounted for. The reason for this rule is that leaving a surgical sponge in the abdominal cavity is a sort of case in which the type of harm itself raises so strong an inference of negligence, and the physician's duty to prevent harm is so clear, that expert testimony is not required to establish the prevailing standard of *Page 1377 care, and the inference arising from res ipsa loquitur is not refuted by the assertion that the nurse's sponge count was reported as in order, because such a report does not relieve the operating and supervising surgeon of his responsibility. . . .' (Emphasis added [in Powell]).
 "We adopt the general rule as stated above as well as the reasoning of the Louisiana Court of Appeal, which addressed this same issue in the case of Guilbeau v. St. Paul Fire and Marine Ins. Co., 325 So.2d 395 (La.Ct.App. 1975), a case similar to the present one. In Guilbeau, it was undisputed that a surgical pad or sponge was left inside the plaintiff's abdomen following a surgical procedure performed by the defendant doctor. Just as in the present case, the defendant received more than one 'correct' sponge count before closing the incision. He argued that it was within the standard of care 'to rely on the "sponge count" of the nurses and a visual inspection of the area of surgery prior to closure to prevent the error committed in this case.' Guilbeau, at 397. The Louisiana Court of Appeal followed the holding of the Louisiana Supreme Court in Grant v. Touro Infirmary, 254 La. 204, 223 So.2d 148 (1969), and explained that case as follows:
 " 'In that case suit was brought against the hospital, its insurer and the operating surgeon's liability insurer for damages sustained by the plaintiff as a result of a sponge being left in her body following surgery. In finding personal negligence on the part of the operating surgeon, the Supreme Court set forth the following statement of law:
 " ' "The general rule . . . is that a surgeon's failure to remove a sponge or pad before closing an incision may be regarded as negligence per se, and some authorities hold that the surgeon cannot relieve himself from liability for injury to a patient caused by reliance on a custom or rule requiring the attending nurse to count the sponges or pads used and removed, and on the nurse's statement as to the count.
 " ' "Albeit there is authority to the contrary, we are convinced that the general rule is sound." 223 So.2d at 154-55.
 " 'In Grant, the Supreme Court was faced with the fact that a sponge had been left in the plaintiff's body following surgery. The fact that it had been placed there during surgery by the surgeon and not removed by him before closure constituted negligence per se on his part, and the fact that he had complied with the "community standard" in relying on the nurse's sponge count did not exonerate him. In the present case we are faced with the same situation. A laparotomy pad was placed in plaintiff's body by the surgeon during surgery and was left there following surgery, and defendant attempted to show that the procedure used by the surgeon to prevent leaving any sponges or pads in the patient was in complete accord with community practice. Grant requires that we find the operating surgeon negligent per se.' "
479 So.2d at 1126-27 (Ala. 1985) (emphasis added inPowell).
We find no error in the court's charge to the jury.
Dr. Ravi next contends that the trial court erred in allowing a deposition of a medical expert to be read and an opinion given based upon medical records that were not in evidence and that were not identified and attached to the expert's deposition. He argues that Dr. Williams, whose deposition was read into the record at trial, had no personal knowledge of the facts and that the plaintiff failed to properly identify and designate the facts upon which the opinion testimony was based.
Although all of the medical records may not have been attached to the deposition itself when it was offered into evidence, the doctor specifically identified in his deposition the medical records upon which he was basing his opinions. Those records were properly entered into evidence immediately prior to the reading of Dr. Williams's deposition *Page 1378 
during the trial of this case. At the time Dr. Williams was testifying, the records to which he was referring for his opinions were in evidence.
We recognize that "the party attempting to offer an expert medical opinion by way of a deposition must demonstrate that the deponent had personal knowledge or that the facts upon which the opinion is based are in evidence," as Dr. Ravi argues in his brief. That burden was met in this case.
Therefore, it was not error for the trial court to permit the deposition of Dr. Williams to be read into evidence.
Finally, Dr. Ravi contends that the trial court erred in allowing the deposition of a medical expert to be read and the expert's opinion given, because, he argues, the expert had no personal knowledge of the facts and the questions were not predicated upon hypothesized facts. Dr. Ravi argues that because Dr. Williams was not the treating physician and did not examine the plaintiff, his opinions must be expressed in the form of answers to hypothetical questions stating the facts upon which those opinions are based. The frame and substance of hypothetical questions to expert witnesses is a matter largely committed to the sound discretion of the trial court.Osborn v. Brown, 361 So.2d 82 (Ala. 1978); Dyer v. Traeger,357 So.2d 328 (Ala. 1978).
The purpose of the rule requiring that hypothetical questions of experts include facts upon which their opinions are based is to provide the finder of fact with the factual premises upon which conclusions are based, rather than with conclusions alone. See Alabama Power Co. v. Robinson, 447 So.2d 148 (Ala. 1983). In this case, the premises upon which Dr. Williams based his opinions (the medical records) were in evidence, as were the facts upon which he based his opinion.
Therefore, it was not an abuse of discretion for the trial court to allow Dr. Williams's testimony over Dr. Ravi's objections.
None of the errors complained of by Dr. Ravi warrants reversal. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.