286 So.2d 751 (1973)
Amzy JACKSON
v.
Dr. John DOE et al.
No. 9587.
Court of Appeal of Louisiana, First Circuit.
November 12, 1973.
Rehearing Denied December 21, 1973.
Writ Granted February 8, 1974.
*752 James A. George and Gary L. Boland, Baton Rouge, for appellant.
Robert L. Kleinpeter, Baton Rouge, for defendants-appellees Baton Rouge Gen. Hospital and Argonaut Ins. Co.
Before LOTTINGER, BLANCHE and CRAIN, JJ.
BLANCHE, Judge.
Plaintiff, Amzy Jackson, Jr., brought this suit for damages against the Baton Rouge General Hospital as a result of certain injuries which he allegedly received due to the negligence of the hospital's agents and employees. A motion for summary judgment was filed on behalf of the hospital based on the doctrine of charitable immunity. The trial court granted the motion and plaintiff has appealed.
The first assignment of error on appeal challenges the trial court's finding that there was no genuine issue as to whether the hospital was in fact a charitable institution. The trial court was correct.
To be a charitable institution within the legally accepted meaning of that term, the hospital must be operated solely to heal the sick and relieve suffering without hope or purpose of obtaining monetary gain from the services it dispenses. Grant v. Touro Infirmary, 254 La. 204, 223 So.2d 148 (1969), states this and cites 15 Am. Jur.2d, Charities, Sec. 148, p. 156, as follows:
"2. Indeed, Touro fits exactly within the definition of a public charitable institution as stated in 15 Am.Jur. 2d, Charities, Sec. 148, p. 156, which describes such institutions to be:
`A corporation the object of which is to provide a general hospital for sick persons, having no capital stock or provision for making dividends or profits, deriving its funds mainly from public and private charity and holding them in trust for the object of sustaining the hospital, and conducting its affairs for the purpose of administering to the comfort of the sick, without expectation or right on the part of those immediately interested in the corporation to receive compensation for their own benefit, is a public charitable institution.'" (Grant v. Touro Infirmary, 223 So.2d 148, 151)
The defendant, Baton Rouge General Hospital, relies on the deposition of its Administrator and other offerings to show that the hospital was originally owned by the Louisiana Baptist Convention and organized according to its charter as a nonprofit organization. It was the Administrator's *753 testimony that the Louisiana Baptist Convention surrendered the contract of the hospital to a Board of Trustees, consisting of twenty-one members, and an Advisory Board, consisting of twenty-four members, all of whom serve absolutely free. The hospital still operates as a nonprofit institution, receiving both paying and nonpaying patients, with all funds received in excess of operating expenses reinvested in the Baton Rouge General Hospital Capital Building Program or for other purposes for the benefit of the Baton Rouge community.
No evidence was offered by plaintiff to controvert these facts, although he does rely on the depositions of the Business Manager and Director of Admissions to show certain procedures followed on admission to the hospital to determine the patient's ability to pay and certain procedures utilized to collect accounts receivable. Additionally, testimony was elicited to show the number of nonpaying patients and the losses on its accounts. Facts on which the plaintiff relies to make it a serious issue as to whether the hospital is in fact a charitable institution are that approximately 7 percent of the hospital's patients are nonpaying and that there is a 3 percent loss on accounts. Plaintiff argues that these facts "hardly tell the story of a beneficient institution which exists only to `serve the community.'" We disagree.
The Baton Rouge General Hospital is not any less charitable within the legally accepted meaning of the term as set forth hereinabove because the hospital's revenues or income exceed its expenditures and because its administrative personnel establish procedures to minimize the cost of operation. In Grant, supra, although the record disclosed that the total income of Touro Infirmary for the year 1962 far exceeded the actual cash value of the services rendered, the Court stated:
"* * * [T]here can be no doubt that Touro is a charitable institution within the legally accepted meaning of that term, as it is not operated to make profit but solely to heal the sick and relieve suffering without hope or purpose of getting gain from the services it dispenses." (Grant v. Touro Infirmary, 223 So.2d 148, 150)
Therefore, we conclude that there is no genuine issue of material fact concerning the status of the Baton Rouge General Hospital as being that of a charitable institution.
Plaintiff's remaining assignment of error relates to his effort to overturn the doctrine of charitable immunity which the Louisiana Supreme Court as recently as 1969, by a four-to-three decision, recognized as the jurisprudence of the state. Grant, supra. The composition of that Court has changed since the time of the rendition of that opinion, with the members formerly making up the majority having retired. Thus, plaintiff has good reason to be optimistic, especially in view of the Louisiana Supreme Court's later decision in Board of Commissioners of Port of New Orleans v. Splendour Shipping & Enterprises Company, 273 So.2d 19 (La., 1973), wherein the doctrine of governmental immunity from tort liability was abrogated. The majority in Grant recognized the criticisms of the doctrine but deferred to the Legislature to make a change. Justice Sanders in his Dissent states that the doctrine was judicially created and can be judicially repudiated, that it clashes with the Civil Code and is an unsound doctrine which has outlived its usefulness. Justice Barham states that there is no foundation in civil law for the doctrine, that it has been mutated, warped and excepted from so that there is no semblance of uniformity or consistency in the extent and nature of the immunity.
We are also aware of the civilian concept which in theory permits us to disregard decisional law when we are convinced that it does not follow positive law as expressed in legislative or constitutional *754 authorities.[1] Albeit we may have such authority, we believe that the rule of law and order is better served if precedent, should it be abandoned, is abandoned by the Supreme Court. In this regard State v. Cenac, 132 So.2d 897 (La.App.1st Cir. 1961) states:
"* * * It is too clear to admit of argument that one of the primary functions of a superior court whether acting under its direct appellate or supervisory jurisdiction via writ is to enumerate definitive interpretations of law binding upon and controlling subsequent decisions of all courts inferior thereto. It is an elementary, basic principle of law that inferior courts are bound by the decisions of superior supervisory tribunals. * * *" (State v. Cenac, 132 So.2d 897, 900)
For the above and foregoing reasons, the judgment of the trial court is affirmed, at the cost of plaintiff-appellant.
Affirmed.
NOTES
[1] See "Techniques of Judicial Interpretation in Louisiana," by Justice Tate, 22 La.L.Rev. 727.