950 So.2d 711 (2006)
Kim McLIN and Curtis McLin
v.
Jeffrey BREAUX, M.D., Michael Leggio, M.D., and Louisiana Medical Mutual Insurance Company.
No. 2005 CA 1911.
Court of Appeal of Louisiana, First Circuit.
November 3, 2006.
Writ Denied January 26, 2007.
*712 Frank Tomeny, III, Tomeny & Fisher, Baton Rouge, for Plaintiffs-Appellees Kim and Curtis McLin.
Janie Languirand Coles, Paul R. Mayer, Jr., Batiza, Godofsky, Penzato, Schroeder, & Ford, Baton Rouge, for Defendants-Appellants Jeffrey Breaux, M.D. and Louisiana Medical Mutual Ins. Co.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
PARRO, J.
Dr. Jeffrey Breaux and his medical malpractice insurer, Louisiana Medical Mutual Insurance Company (LAMMICO), appeal a judgment granting the plaintiffs' motion for judgment notwithstanding the verdict, in which the trial court modified a jury verdict that had found no negligence on the part of Dr. Breaux, and rendered a judgment apportioning fault evenly between him and Lane Memorial Hospital and awarding general and special damages. For the following reasons, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
On July 26, 2001, Dr. Breaux performed a surgical procedure on Kim McLin at Lane Memorial Hospital.[1] Her initial post-operative condition was uneventful, but several days after her release from the hospital, she contacted Dr. Breaux with complaints of severe abdominal pain, constant nausea, and vomiting. An x-ray on *713 July 31 revealed what appeared to be a laparotomy pad (lap pad) in her abdominal cavity. Dr. Breaux performed emergency surgery that day and removed a lap pad from McLin's abdomen. After the pad was removed, she had a normal recovery.
At the McLins' request, a medical review panel was convened. The physicians on the panel concluded that neither Dr. Breaux nor Dr. Michael Leggio, who had assisted during the initial surgery, breached the standard of care.[2] McLin and her husband then filed suit against both doctors and their insurer, LAMMICO. Dr. Leggio was dismissed before trial, and the case proceeded to a jury trial against Dr. Breaux. The evidence included McLin's medical records, the results of the medical review panel, expert testimony, and testimony from all of the medical personnel who had participated in the first surgical procedure. The key facts are basically undisputed.[3] Before the surgery began, the hospital's nursing staff who were assisting with the procedure set out and counted all the instruments and materials that would be used. The surgery proceeded without incident. At its completion, Dr. Breaux manually explored McLin's abdominal cavity and removed lap pads and sponges he had used. He then visually examined the area and did not see any remaining materials. When he began to close the internal membranes or fascia surrounding the abdominal cavity, the nurses performed a surgical count of everything that had been used during the surgery. Upon completion of this count, they told Dr. Breaux that all materials were accounted for and were outside of McLin's body. Another count was done while he performed the final closure of the skin, and the same result was reported to him. However, the hospital staff admittedly did not completely follow the hospital's policy for performing the surgical counts, and the counts were obviously incorrect, as one of the lap pads was left in McLin's body.[4]
After considering this evidence, the jury found Dr. Breaux was not negligent. A judgment in accord with this verdict was signed December 23, 2004. The McLins then sought a judgment notwithstanding the verdict (JNOV), based on jurisprudence stating that a surgeon has a non-delegable duty to remove all sponges used during surgery from a patient's body. The trial court agreed and granted the motion, apportioning fifty percent fault to Dr. Breaux and fifty percent to Lane Memorial Hospital. In a judgment signed April 5, 2005, Dr. Breaux and LAMMICO were ordered to pay damages of $28,685.86, plus legal interest, to McLin, and loss of consortium damages in the amount of $500, plus legal interest, to her husband. Dr. Breaux and LAMMICO appeal.

*714 APPLICABLE LAW
Judgment Notwithstanding the Verdict  JNOV
Article 1811(F) of the Louisiana Code of Civil Procedure authorizes a trial court to grant a JNOV on either the issue of liability or damages or both. A JNOV should be granted only if the trial court, after considering the evidence in the light most favorable to the party opposed to the motion, finds it points so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict on that issue. Broussard v. Stack, 95-2508 (La.App. 1st Cir.9/27/96), 680 So.2d 771, 779-80. In cases where virtually no factual dispute exists and no credibility determinations by the fact finder are required, legal questions are within the province of the trial court to decide by entering a JNOV. See Junot v. Morgan, 01-0237 (La.App. 1st Cir.2/20/02), 818 So.2d 152, 157-58.
Medical Malpractice
A plaintiff in a medical malpractice action has the burden of proving: (1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; if the defendant physician practices in a particular specialty, and the alleged acts of medical negligence raise issues peculiar to that particular medical specialty, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians within the involved medical specialty; (2) that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment, in the application of that skill; and (3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care, the plaintiff suffered injuries that would not otherwise have been incurred. LSA-R.S. 9:2794(A). Summarizing, the plaintiff must establish the standard of care applicable to the doctor, a violation by the doctor of that standard of care, and a causal connection between the doctor's alleged negligence and the plaintiff's injuries. Pfiffner v. Correa, 94-0924 (La.10/17/94), 643 So.2d 1228, 1233. Injury alone does not raise a presumption of the physician's negligence. LSA-R.S. 9:2794(C).
To meet this burden of proof, the plaintiff generally is required to produce expert medical testimony. Lefort v. Venable, 93-2345 (La.App. 1st Cir.6/28/96), 676 So.2d 218, 220. However, the jurisprudence has recognized exceptions in instances of obvious negligence, i.e., instances in which the medical and factual issues are such that a lay jury can perceive negligence as well as any expert can. Pfiffner, 643 So.2d at 1234. Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body, from which a lay person can infer negligence. Pfiffner, 643 So.2d at 1233-34; Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713, 719 (La.1986). The prevailing case law in Louisiana holds that a surgeon has a non-delegable duty to remove all sponges placed in a patient's body. See Grant v. Touro Infirmary, 254 La. 204, 223 So.2d 148 (1969), overruled on other grounds by Garlington v. Kingsley, 289 So.2d 88 (La.1974); Chappetta v. Ciaravella, 311 So.2d 563 (La.App. 4th Cir.), writ denied, 313 So.2d 841 (La.1975); Guilbeau v. St. Paul Fire & Marine Ins. Co., 325 So.2d 395 (La.App. 3rd Cir.1975), writ denied, 329 So.2d 454 (La.1976); Johnston v. Southwest Louisiana Assoc., 96-1457 *715 (La.App. 3rd Cir.4/2/97), 693 So.2d 1195; Romero v. Bellina, 01-0274 (La App. 5th Cir. 9/25/01), 798 So.2d 279, 281, writ denied, 01-2852 (La.1/11/02), 807 So.2d 237. See also Kelly v. Riverside Med. Ctr., 499 So.2d 1135, 1136 (La.App. 1st Cir.1986); Seals v. Gosey, 565 So.2d 1003, 1011 (La. App. 1st Cir.1990).

DISCUSSION
Dr. Breaux and LAMMICO contend the court erred in granting the motion for JNOV, because the case law stating a surgeon has a "non-delegable" duty to remove materials used during surgery from the patient's body is a form of strict liability, which is not the current law and was legislatively overruled by the passage of LSA-R.S. 9:2794. This statute was first enacted in 1975 and, with reference to the burden of proof in a medical malpractice cause of action, has remained substantially the same since that date. The appellants correctly note that the Grant case cited above, in which the Louisiana Supreme Court first enunciated this independent duty that the surgeon could not delegate to nurses, predated this legislation. They argue that later decisions from other courts of appeal erroneously relied on Grant and are not binding on this court. They also contend that the way in which surgical procedures are performed does not allow a surgeon to independently ensure that every lap pad or sponge has been removed, and that in this case, it is clear from the evidence that the hospital staff violated procedure and was solely at fault in allowing the lap pad to remain in McLin's body. Therefore, they urge this court to reinstate the jury verdict finding that Dr. Breaux was not negligent.
The Grant case involved an inaccurate surgical count by the nurses, resulting in the failure to remove a gauze "sponge" from a patient's body.[5] During that surgery, the sponges were attached to a metal holder or clamp as they were inserted and removed. The court stated:
The surgeon performing the operation inserts the sponges and this is, of course, a medical treatment to absorb bleeding so that the operation may be performed and, when the surgery is over, it is the surgeon who must remove the sponges before closing the incision.
Grant, 223 So.2d at 153. Recognizing the majority rule on this issue in cases from other jurisdictions, the supreme court held that while the nurses "were unquestionably negligent in making an incorrect count of the sponges" withdrawn from the patient's body, the surgeon was guilty of "concurrent fault" in failing to notice that one of the holders he withdrew did not have a sponge attached. Grant, 223 So.2d at 155.
While the Grant case did precede the enactment of LSA-R.S. 9:2794, and its facts are distinguishable from the matter at hand,[6] there are many cases subsequent to Grant, and also cases subsequent to the enactment of the statute, including some from this court, imposing liability on surgeons under factual circumstances strikingly similar to the case we are reviewing.[7] *716 A sampling of those cases shows consistent reliance on the principle established in Grant.
The patient in the Chappetta case had a hysterectomy, during which a lap pad was left in her abdominal cavity. As required by established procedure, the nurses had made a count and written record of sponges and lap pads before the surgery. At the conclusion of the operation, the surgeon made a visual and manual inspection of the operative site and conferred with the nurses as to the count. Before final closing, a second count, "which was later found to be erroneous, corresponded to the pre-operative count." Chappetta, 311 So.2d at 565. Noting it was the surgeon who had the duty to remove the sponges before closing the incision, the fourth circuit court said:
[The surgeon] could not avoid this duty by the delegation of post-operative counting of the sponges to nurses and reliance thereon, or a mere showing that he made a visual and manual inspection of the operative site only.
Chappetta, 311 So.2d at 566.
In the third circuit's Guilbeau case, surgery was performed on a patient with colon cancer. A sponge count made and recorded by the nurses after the surgery agreed exactly with the pre-surgery count, and the nurses conveyed this information to the surgeon before the incision was closed. However, after several months of serious post-surgery problems, an x-ray revealed the presence of a lap pad in the small bowel, and additional surgery was required to remove it. The court stated:
This appeal does not involve a factual dispute. It is admitted by defendant that error was committed when the pad was left in the plaintiff's abdominal cavity during the surgery. It is defendant's contention, however, that [the surgeon] should not be blamed for the damages sustained by the plaintiff because he met the standard of professional care of the locality and exercised the degree of skill, care and judgment which is ordinarily exercised by similar practitioners in the area. Evidence to support this contention was presented in the form of testimony by experts which indicated that the general practice in the area was to rely on the "sponge count" of the nurses and a visual inspection of the area of surgery prior to closure to prevent the error committed in this case.
Guilbeau, 325 So.2d at 397. Citing the Grant case as "the latest expression of our Supreme Court on the subject," the court found the operating surgeon negligent per se. Guilbeau, 325 So.2d at 398.
In the fifth circuit's Romero case, before the final suturing of the laser incision, the nurses erroneously informed the surgeon that all lap pads and sponges were accounted for. However, a "lap sponge" was left in the patient's abdomen. The surgeon testified that he relied on the nurses to keep track of sponges and lap pads used during surgical procedures; the medical review panel and experts who testified agreed that his conduct met the applicable standard of care. However, the court concluded that "the nurses' count is a remedial measure that does not discharge the surgeon's independent duty to insure that *717 all sponges are removed before the incision is closed," and affirmed the trial court's conclusion that a surgeon's duty to remove foreign objects placed in a patient's body during surgery is an independent, non-delegable duty. Romero, 798 So.2d at 282.
In reaching this conclusion, the court cited an earlier case from the third circuit in which, due to an inaccurate count by the surgical nurses, surgical gauze was left in the patient following a hernia operation. The surgeon in that case explained that although the nurses do not insert or remove the sponges during surgery, it was their responsibility to count them and he had to rely on the accuracy of that count. Responding to this statement, the third circuit said:
[W]e disagree with [the surgeon's] assertion that the nurses have the sole duty to account for all sponges and that the surgeon discharges his duty by reasonably relying on their sponge count. We think this argument contrary to common sense: after all, [the surgeon] had exclusive control over the sponge from the time he physically placed it inside his patient until he removed it. We think, as did the trial judge, that the nurses' count is a remedial measure that cannot relieve the surgeon of his non-delegable duty to remove the sponge in the first instance.
Johnston, 693 So.2d at 1198. The court held that both the surgeon and the nurses had a duty to account for the sponges and were concurrently at fault in leaving a sponge in the patient's body. Johnston, 693 So.2d at 1198.
In this court's Seals decision, a small piece of gauze was removed from a gunshot wound in the patient's hand several weeks after a surgical procedure. There was evidence that the gauze was a different material from any of the materials used during the surgery, and that the wound had re-opened and been treated several times by lay persons and by other medical practitioners during the weeks following the surgery. After a jury determined the surgeon was not negligent, the trial court granted a JNOV in favor of the patient, and the surgeon appealed. Concerning the legal issue, this court stated unequivocally that the failure to remove a surgical sponge is substandard conduct; therefore, if the surgeon had introduced the foreign material into the wound, it was a breach of the standard of care to leave it there. Seals, 565 So.2d at 1010 n. 3. However, based on the factual evidence in the case, this court reversed the JNOV, finding that a reasonable and fair-minded jury exercising impartial judgment may have reasonably concluded that the surgeon was not responsible for inserting the particular foreign material that was later removed from the plaintiff's hand. Seals, 565 So.2d at 1011.
The Kelly case from this court also involved a lap sponge left in the patient's abdomen at the conclusion of an operation. This court stated, "The record shows that the lap sponges were counted by the nurse, assisted by the chief surgeon. . . . The law is clear that when a lap sponge is left in a patient in the course of surgery, the chief surgeon and the hospital may be held liable." Kelly, 499 So.2d at 1137. The court further stated that under these facts, there was "no serious question of liability" on the part of the hospital and the chief surgeon. Kelly, 499 So.2d at 1136.[8]
*718 In contrast to these cases is this court's decision in Walston v. Lakeview Regional Med. Ctr., 99-1920 (La.App. 1st Cir.9/22/00), 768 So.2d 238, writ denied, 00-2936 (La.12/15/00), 777 So.2d 1229, in which a man brought a medical malpractice claim against the hospital and surgeons after his wife died following cardiac surgery. Emergency surgery had been performed on her to repair an aortic aneurism; immediately after the first surgery, a second surgery was required to halt internal bleeding. The nurses counted sponges before and after the first surgery, but not before the second.[9] At the conclusion of the second surgery, the nurses told the surgeon that one sponge was missing. He could not manually locate it and decided to close the incision anyway. A follow-up x-ray several hours later revealed the location of the sponge, and a third surgical procedure was performed to remove it from the patient. She died two weeks later. The plaintiff's suit alleged a specific act of negligence against the hospital  the failure of the hospital's nursing staff to count sponges properly, resulting in a sponge being left in his wife's body during the second of the two emergency surgeries. In Walston, it was the hospital that moved for summary judgment, supported by the expert opinion of the medical review panel that the hospital staff had not been negligent.[10] The plaintiff opposed the motion, but did not provide the name of an expert to testify as to the standard of care or the breach of that standard, urging the doctrine of res ipsa loquitur was applicable under these facts. This court rejected that argument and affirmed the summary judgment in favor of the hospital, stating:
In this matter, complicated medical considerations, concerning whether appropriate procedures were utilized by the surgical support staff given the emergency situation that [the patient's] condition presented, do not involve negligence so obvious that it could be inferred. Given the complexity of the issues before the court, expert testimony was necessary.
Walston, 768 So.2d at 242.
From this sampling, the only cases in which the surgeon was found to be free of fault, even though a foreign material was found in the patient's body after the completion of a surgical procedure, were the Seals and Walston cases from this court. These cases are factually dissimilar from the matter before us. In Seals, the foreign material could have been inserted in the patient's hand during the weeks after the surgery when the wound re-opened, was cleaned, and was re-bandaged several times by persons other than the surgeon who performed the initial surgery. Moreover, the gauze that was eventually removed was a different material than that used in the surgery. Thus, there was a failure to prove that it was the initial surgeon who actually inserted the material. *719 The Walston decision did not involve the patient's claims against the surgeon, but only the claim that the nursing staff improperly counted the lap pads. Again, the facts of that case showed that, although the normal counting procedure was not followed between the two emergency surgeries, before the incision in the second surgery was closed, the nurses correctly informed the surgeon that a sponge was missing, and expert testimony agreed their actions met the standard of care. Therefore, under the enhanced burden of proof of LSA-C.C.P. art. 966(C), res ipsa loquitur could not defeat the motion for summary judgment.
However, the facts of the case we are reviewing cannot be so easily distinguished from the line of cases following Grant. This court, in Kelly and in Seals, recognized and affirmed the legal principle established in Grant. And while we find the appellant's argument in this case quite persuasive and compelling,[11] we are constrained by this precedent from our court and by the apparent continuing viability of the principle of a non-delegable duty established in Grant, the latter of which is not within this court's authority to change.[12] Therefore, we conclude the lower court did not err in deciding on JNOV that Dr. Breaux had a duty to remove the lap pad from McLin's body, that this duty could not be avoided by reliance on or delegation to the nurses who performed the surgical counts, and that his failure to remove the lap pad was, as a matter of law, a breach of the surgeon's duty. Also, based on the cases we have reviewed, the lower court did not abuse its discretion in apportioning fifty percent of the fault to Dr. Breaux under the facts of this case.[13]

CONCLUSION
Based on the foregoing, the judgment of April 5, 2005, is affirmed. All costs of this appeal are assessed to Dr. Breaux and LAMMICO.
AFFIRMED.
McCLENDON, J., concurs.
NOTES
[1] The procedure was necessitated by an ovarian cyst, and included removal of the left ovary and fallopian tube and severing of internal adhesions.
[2] The request for a medical review panel also included Lane Memorial Hospital. However, because the hospital was dismissed after a settlement, the panel addressed only the actions of the two doctors.
[3] In fact, the parties stipulated that during the first surgery, Dr. Breaux placed all the lap pads inside McLin's abdomen; that he had a duty to prevent any object being left inside of her abdomen; that he failed to remove all pads from inside her abdomen; that a second surgery was done five days later, during which he removed a lap pad from inside McLin's abdomen; and that the lap pad removed during the second surgery was one of those that had been used in the initial surgery.
[4] According to the witnesses, a lap pad is a "dishcloth-size" cotton gauze pad with a long blue string or tape attached to it. The string is radiopaque, which makes it visible on an x-ray. These large pads are often folded or "wadded up" as they are inserted, because they are used to "pack" the intestines out of the way during abdominal surgery, to soak up blood and other bodily fluids, and to staunch bleeding.
[5] Although there is a difference between a lap pad and a sponge, which is much smaller and more compact, the cases often describe any absorbent material inserted into the patient's body during surgery as a "sponge." From the description of the item left in the patient in the Grant case, it obviously was a lap pad, rather than a sponge.
[6] A surgeon who testified as an expert in this case explained that metal attachments on lap pads were standard at one time, but have been replaced in the last two decades by the radiopaque tapes.
[7] And there are many more, including the supreme court's subsequent Hastings and Pfiffner cases, in which "leaving a sponge in a patient's body" continues to be described as such "an obviously careless act" that "a lay person can infer negligence" on the part of the surgeon without the assistance of any expert testimony. This reference has also been used in contexts other than as an evidentiary rule or burden of proof. For instance, in a case discussing the history of continuing torts, the supreme court gave as an example, "the continuing injury resulting from a single act of malpractice, such as leaving a sponge inside a patient. . . ." In re Medical Review Panel for Claim of Moses, 00-2643 (La.5/25/01), 788 So.2d 1173, 1186.
[8] However, under the facts presented, a surgeon who assisted with the surgery was not held liable for leaving the lap sponge in the patient. A similar result was also reached by the third circuit in Megason v. St. Paul Fire & Marine Ins. Co., 355 So.2d 945 (La.App. 3rd Cir.), writ denied, 356 So.2d 1001 (La.1977).
[9] This statement seems inconsistent, but in the context of the surgical counting procedure, it is not. According to testimony in the case before us, the routine "before-surgery" count of sponges involves removal of the sterile materials from packages, separating and laying them out in a prescribed pattern on a sterile field, counting them as they are laid out, and recording the count. If more sponges are needed during the surgery, these are opened, counted, and added to the "before-surgery" count. Apparently in the Walston case, a true "before-surgery" count was not done between the first and second surgeries, and the nurses simply added the new sponge count to the earlier count.
[10] Apparently this opinion of the medical review panel included considerable other information, because this court noted, "There is a body of direct evidence, through medical records and witness testimony[,] as to the performance of sponge counts by the nursing staff." Walston, 768 So.2d at 242.
[11] For a well-reasoned discussion opposing the application of Grant and distinguishing it on its facts, see the dissenting opinion in Guilbeau, 325 So.2d at 398-400 (Miller, J., dissenting and assigning reasons in favor of granting a rehearing).
[12] We are aware of the civilian concept which, theoretically, permits us to disregard jurisprudence when we are convinced that it does not follow positive law as expressed in legislative or constitutional enactments. See LSA-C.C. arts. 1-4. Although the argument has been made that we have such authority, we believe the rule of law and order is better served if supreme court precedent, should it be deemed abandoned or abrogated, is declared abandoned or abrogated by the supreme court. See Jackson v. Doe, 286 So.2d 751, 753-54 (La.App. 1st Cir.1974), judgment set aside on other grounds and remanded, 296 So.2d 323 (La.1974). We note that the setting aside of the Jackson judgment and the overruling of the Grant case by the Garlington case effected only the abrogation of the principle of charitable immunity, which previously had been applied to shield certain hospitals from liability.
[13] See Romero, 798 So.2d at 282 (finding no error in the trial court's allocation of 70 percent fault to surgeon and 30 percent to nurses); Johnston, 693 So.2d at 1200-01 (affirming trial court's reallocation of percentages of fault by JNOV to 61 percent to surgeon and 39 percent to nurses). In both of these cases, the count performed by the nurses was incorrect and the incorrect information was reported to the surgeon before the surgery was concluded.