STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-0318


BRENNA DAVIS

VERSUS

WOMEN AND CHILDREN'S HOSPITAL
LAKE CHARLES


************


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2009-4518
HONORABLE ROBERT WYATT, DISTRICT JUDGE


************


JIMMIE C. PETERS
JUDGE


************

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Jimmie C. Peters, Judges.


AFFIRMED.

R. Scott Iles
Attorney at Law
P. O. Box 3385
Lafayette, LA 70502
(337) 234-8800
COUNSEL FOR PLAINTIFF/APPELLANT:
    Brenna Davis

Kurt S. Blankenship
Christopher Otten
Perrey S. Lee
Blue Williams, L.L.P.
3421 N. Causeway Blvd., Suite 900
Metairie, LA 70002
(504) 831-4091
COUNSEL FOR DEFENDANT/APPELLEE:
    Women and Children's Hospital Lake Charles

PETERS, J.

The plaintiff, Brenna Davis, originally brought this medical malpractice action against Dr. Richard Shimer and the Women and Children's Hospital Lake Charles (hereafter sometimes referred to as the Hospital) to recover damages sustained as a result of a sponge that was left in her body following a lap band surgery. However, the matter went to trial against the Hospital only.[1] The trial court awarded Ms. Davis $50,000.00 in damages and apportioned fault equally between Dr. Shimer and the Hospital. In her appeal, Ms. Davis asserts that the trial court erred in its apportionment of fault. For the following reasons, we affirm the trial court judgment in all respects.

## REVIEW OF THE RECORD

The underlying facts that gave rise to this litigation are not in dispute. In 2008, Ms. Davis was almost twenty-eight years old and suffered from an excessive weight problem.[2] In an effort to control her weight problem, she contacted Dr. Shimer, a Lake Charles, Louisiana general surgeon who performs weight reduction surgeries. After discussing options with Dr. Shimer, Ms. Davis decided to have a lap band procedure.[3]

Dr. Shimer laparoscopically performed Ms. Davis' lap band surgery on June 2, 2008. The surgical procedure is minimally invasive as Dr. Shimer simply makes a number of very small incisions. Cameras and surgical instruments are inserted in these incisions and the lap band is connected. During the procedure, Ms. Davis

---

[1]While the record before us is not clear as to the specific dates, it is not disputed that Ms. Davis settled her claim against Dr. Shimer before the trial on the merits.

[2]At the time, Ms. Davis weighed over 200 pounds.

[3]A lap band surgical procedure entails inserting an adjustable belt around the top portion of the stomach immediately below the point where the esophagus connects to the stomach. The presence of the belt is intended to cause an individual to stop eating sooner because of a full feeling caused by the restrictive belt. Thus, the individual ingests fewer calories, causing a weight loss.

was under general anesthesia. Two Hospital employees, Sheena LeBoeuf and Anthony Williams,[4] assisted Dr. Shimer in the surgery.

The record establishes without dispute that a three-part procedure exists during surgery to keep an accurate count of the sponges used. The first count occurs at the beginning of an operation, even before the patient enters the operating theater. In the first count, the surgical technician and the circulating nurse count all the sponges using a consistent procedure. Specifically, the surgical technician counts out loud while touching each of the individual sponges[5] as the nurse looks over his shoulder. When the surgical technician completes the oral count, the circulating nurse enters the specific number of sponges on a white board so that the surgeon is able to see that a count has been performed.

The second count occurs after the laparoscopic instruments are removed from the patient, but before the incisions are closed. The surgical technician performs this count in the same manner as the first count by orally counting each sponge while the nurse observes the count for accuracy. The final count occurs after the incisions are closed but before the surgeon leaves the operating theater. Again the surgical technician states the count aloud while being observed by the nurse.

In Ms. Davis' case, the final sponge count was inaccurate. When Ms. Davis began to experience an unexplained post-surgical discharge at an incision site, Dr. Shimer caused her to undergo a CAT scan. The CAT scan revealed haziness at the wound site and, on June 19, 2008, Dr. Shimer performed a laparoscopic exploratory procedure at the Hospital and discovered a crumpled sponge inside Ms. Davis' body, underneath the skin and exactly where Dr. Shimer had placed the

---

[4]Ms. LeBoeuf is a registered nurse, and Mr. Williams is a surgical technician.

[5]The circulating nurse, who is not sterile, does not touch the sponges for that reason.

2

port for the lap band. Dr. Shimer removed the sponge during the procedure and Ms. Davis subsequently fully recovered from the procedure.[6]

After Ms. Davis filed suit against Dr. Shimer and the Hospital, the parties waived the requirement that the matter be referred to a medical review panel. *See* La.R.S. 40:1299.47(B)(1)(c). Additionally, Ms. Davis stipulated that her claim did not equal or exceed $50,000.00, thereby precluding the availability of a jury trial. La.Code Civ.P. art. 1732(A)(1).

The November 24, 2010 bench trial resulted in a judgment wherein the trial court awarded Ms. Davis $50,000.00 in damages and assessed fault equally between the Hospital and Dr. Shimer. In her one assignment of error, Ms. Davis asserts that the trial court erred in assigning any fault to Dr. Shimer.

### OPINION

Because the Hospital neither appealed the trial court's judgment nor answered Ms. Davis' appeal, the sole issue before us is whether the trial court abused its discretion in not assigning all of the fault for Ms. Davis' damages to the Hospital.[7] Under La.Civ.Code art. 2323, when there are multiple tortfeasors the trier of fact must allocate fault so that each tortfeasor pays only for that portion of the damages it has caused. However, before fault can be allocated, there must be a finding that there are multiple tortfeasors. To put the inquiry another way, we must determine whether the trial court erred in finding that Dr. Shimer bore any fault in causing Ms. Davis' damages.

With regard to a medical malpractice claim against a physician the party claiming negligence on the part of the physician must prove:

---

[6]One of Ms. Davis' complaints is that the second procedure increased the size of the scar caused by the initial procedure.

[7]It is well established that under the doctrine of respondeat superior a hospital can be liable for the negligence of its employees. *Odom v. State Dep't of Health and Hosps.*, 98-1590 (La.App. 3 Cir. 3/24/99), 733 So.2d 91; *Little v. Pou*, 42,872 (La.App. 2 Cir. 1/30/08), 975 So.2d 666, *writ denied*, 08-806 (La. 6/6/08), 983 So.2d 920.

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians . . . licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians . . . within the involved medical specialty.

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

La.R.S. 9:2794(A)(1-3).

In this case, the only evidence of the standard of care applicable to Dr. Shimer is his testimony. He specifically testified that the standard of care applicable to him as a surgeon does not require him to stand over the surgical technician's shoulder and count the sponges along with him. In other words, his task is to perform the surgery, inserting and removing the sponges when necessary. During most of the laparoscopic surgery, Dr. Shimer is looking through a camera into the field of surgery, and he relies on the other personnel to keep track of the sponges as he inserts and removes them. He suggested that the only obligation he has toward seeing that nothing remains in the patient before closing is that he palpates around the incisions to see if he feels anything before closing them. In this case, he felt nothing that would cause him to believe a sponge remained in the patient[8] and relied on the correctness of the counts by the surgical technician and the circulating nurse.

Mr. Williams testified that his duties were to set up a sterile field before an operation, to have the instruments ready for the surgeon, and to keep everything sterile during the operation. Although he had little memory of Ms. Davis' first

_____

[8]According to Dr. Shimer, the three and one-half by four inch sponge that remained in Ms. Davis would become the size of a small egg yolk when saturated with blood.

4

operation, he did acknowledge that the medical records from that procedure reflected that he and Ms. LeBoeuf had accounted for all the instruments and supplies used in the surgery, including the sponges. He testified that in the critical third count of the sponges, he would normally ask the nurse whether she was comfortable with the count. If she answered in the affirmative, they would inform the surgeon that the counts were correct and the surgeon would be able to leave the operating theater. According to Mr. Williams, a discrepancy in any count would be reported to the surgeon and everyone, including the surgeon, would begin looking for the missing item. Mr. Williams emphasized that the surgeon does not participate in counting the sponges, and that the surgeon relies on the surgical technician and the nurse to count them correctly.

Ms. LeBoeuf explained that her role was to prepare and position the patient. She acknowledged the counting process previously described and stated that she made the appropriate entries on the medical chart reflecting that all sponges were accounted for in all three counts. Neither she nor Mr. Williams could account for the error in Ms. Davis' procedure.

In rendering its decision to assess Dr. Shimer with fifty percent of the fault in failing to remove the sponge, the trial court first recognized that the plaintiff was not obligated to present expert evidence to establish a standard of care different from that testified to by Dr. Shimer because expert testimony was not necessary to establish that Dr. Shimer was negligent in leaving a sponge in his patient's body. *See Pfiffner v. Correa*, 94-924 (La. 10/17/94), 643 So.2d 1228 and *Hastings v. Baton Rouge Gen. Hosp.*, 498 So.2d 713 (La.1986). Additionally, the trial court relied on jurisprudence holding that a physician cannot delegate his obligation to count the sponges used in a surgical procedure in finding Dr. Shimer partially at fault in this matter. *See Grant v. Touro Infirmary*, 223 So.2d 148 (La.1969), *overruled on other grounds by Garlington v. Kingsley*, 289 So.2d 88 (La.1974);

5

*McLin v. Breaux*, 05-1911 (La.App. 1 Cir. 11/3/06), 950 So.2d 711, *writ denied* 06-2822 (La. 1/26/07), 948 So.2d 177; *Romero v. Bellina*, 01-274 (La.App. 5 Cir. 9/25/01), 798 So.2d 279, *writ denied* 01-2852 (La. 1/11/02), 807 So.2d 237; *Johnston v. Sw. La. Ass'n*, 96-1457 (La.App. 3 Cir. 4/2/97), 693 So.2d 1195; *Seals v. Gosey*, 565 So.2d 1003 (La.App. 1 Cir.), *writ denied* 569 So.2d 983 (La.1990); *Kelly v. Riverside Med. Ctr.*, 499 So.2d 1135 (La.App. 1 Cir. 1986); *Guilbeau v. St. Paul Fire and Marine Ins. Co.*, 325 So.2d 395 (La.App. 3 Cir. 1975), *writ denied* 329 So.2d 454 (La.1976); *Chappetta v. Ciaravella*, 311 So.2d 563 (La.App. 4 Cir.), *writ denied* 313 So.2d 841 (La.1975).

We find ourselves obligated to follow the well-established jurisprudence on this issue and, in doing so, must affirm the trial court judgment in all respects.

## DISPOSITION

For the foregoing reasons, we affirm the trial court judgment in all respects. We assess all costs of this appeal to Brenna Davis.

**AFFIRMED.**