FREDERICKA HOMBERG WICKER, Judge.
lain this medical malpractice action, plaintiff appeals the trial court’s granting of summary judgment in favor of defendants-doctors. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

Plaintiff, Andy Valence, underwent surgery for a ventral hernia repair on December 21, 2006, at East Jefferson General Hospital. Drs. Raymond DeCorte and Don Guzzetta, defendants herein, performed plaintiffs surgery using a Salute 20 Fixation Device, or “tacker,[1]” to affix a large oval mesh patch[2] to plaintiffs abdomen. During the surgery, the tacker al *457 legedly misfired twenty-one staples into plaintiffs abdomen.[3] Following the hernia repair, but while plaintiff remained in the operating room, defendants conducted an instrument count which showed one instrument, a hemostat, missing. After an x-ray taken in the operating room 13revealed that the hemostat remained in plaintiffs abdomen, defendants retrieved the hemostat from plaintiffs abdomen.
Plaintiff, in proper person, filed suit against various defendants[4] including defendants herein, Drs. DeCorte and Guzzet-ta, alleging that they negligently: (1) used a defective tacker subject to recall; (2) used a defective mesh patch subject to recall; and (3) left a hemostat in his body following the hernia repair surgery.
Following preliminary discovery, defendants filed a motion for summary judgment, asserting that plaintiff failed to produce any evidence to show that defendants breached the standard of care in performing plaintiffs surgery. Specifically, defendants pointed out that plaintiff produced no expert testimony or opinion to support his allegations against them. In support of their motion, defendants attached a medical review panel opinion stating that defendants did not breach the standard of care in performing plaintiffs surgery. The medical review panel, as to Drs. Guz-zetta and DeCorte, found:
1.Dr. Guzzetta properly assisted Dr. DeCorte in the patient’s hernia repair.
2. Dr. DeCorte appropriately tested the tacker prior to using it on the patient.
3. The surgeon would not be able to see how the tack is fired until he removes the instrument. Only a small portion of the tack is visible underneath the mesh after firing. A straight tack would not be seen because the straight part would be in the subcutaneous tissue.
4. The number of tacks used in this procedure was reasonable.
5. Tack counting is variable in all eases and is not required.
6. The uncoiled tacks would not indicate further surgical intervention.
7. The records indicate that the mesh was successfully secured by the tacks.
8. Instrument counts are performed following closure because the act of closing the patient requires the use of more instruments that could be left in the body and those instruments also have to be accounted for.
|49. The mesh recall was for a memory recoil ring breaking during insertion and this event did not occur during the patient’s surgery. Therefore, it was not necessary for Dr. DeCorte to notify the patient of the recalled mesh.
In response to the motion for summary judgment, plaintiff filed an opposition memorandum arguing that no expert testimony is required in this case because it is not a medical malpractice case and/or is a *458 ease in which a lay person could infer obvious negligence.
The trial court conducted a hearing on defendants’ motion for summary judgment on August 21, 2012. At the conclusion of the hearing, the trial judge granted defendants’ motion, finding that plaintiff failed to sustain his burden of proof because he failed to produce any expert medical opinion to prove that defendants breached the standard of care in performing plaintiffs surgery. This timely appeal follows.
DISCUSSION
In his sole assignment of error, plaintiff alleges that “[t]he trial court erred in failing to allow then [sic] plaintiff to submit his physical evidence of his surgical staple and ex-rays, and ct-scans.” We address this assignment of error and review the trial court’s granting of defendants’ motion for summary judgment.
Appellate courts review the granting or denial of a motion for summary judgment de novo under the same criteria governing the district court’s consideration of whether summary judgment is appropriate. Matthews v. Banner, 08-339 (La.App. 5 Cir. 10/28/08), 996 So.2d 1161, 1163. The summary judgment procedure is favored and shall be construed, as it was intended, to secure the just, speedy, and inexpensive determination of most actions. La. C.C.P. art. 966(A)(2).
A motion for summary judgment must be granted “if the pleadings, depositions, answers to interrogatories, and admissions, together with the |,.¡affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2). On a motion for summary judgment, the burden of proof remains with the movant. “However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.” La. C.C.P. art. 966(C)(2).
The Louisiana Supreme Court has interpreted the burden-shifting language of La. C.C.P. art. 966(C)(2) and found that the article “first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial.” Wright v. Louisiana Power & Light, 06-1181 (La.3/9/07), 951 So.2d 1058,1070.
In this case, we first find that plaintiffs claims against defendants are clearly allegations of medical malpractice.[5] To estab *459 lish a claim for medical malpractice, |fia plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) the defendant breached that standard of care; and (3) there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794.
Expert testimony is generally required in a medical malpractice case to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. Schultz v. Guoth, 10-0343 (La.1/19/11), 57 So.3d 1002, 1006-07. The Louisiana Supreme Court has recognized that expert testimony is not always required but that, in most cases, the plaintiff will be unable to sustain his burden of proof without such evidence. Id. In cases of “obvious negligence that could be inferred by a lay person,” expert testimony may not be required. Pfijfmr v. Correa, 94-0924, 94-0963, 94-0992 (La. 10/17/94), 643 So.2d 1228, 1234. The Louisiana Supreme Court has provided examples of acts of obvious negligence in a medical malpractice action that would not require the plaintiff to present expert testimony, such as “where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient’s body.” Id.
In this case, plaintiff asserts expert testimony is not required because defendants’ negligence — firing twenty-one staples into his abdomen and leaving a hemostat in his body during surgery — is obvious negligence that a lay person could l7infer. Alternatively, plaintiff asserts that the doctrine of res ipsa loqui-tur applies and substitutes the requirement for expert testimony in his case.
Plaintiff argues that retrieval of the hemostat after his surgery caused a “redistribution and disruption of the hernia repair ...” and that leaving an instrument in a patient’s body after surgery is clear negligence that a lay person could infer. Conversely, defendants argue that this is not a “retained instrument case” where an instrument is retained in a patient’s body after surgery and is discovered after the retained instrument causes pain or symptoms. In support of their motion for summary judgment, defendants produced a medical review panel opinion that specifically states defendants did not breach the standard of care in the timing of the instrument count at the conclusion of plaintiffs surgery or in the retrieval of the hemostat left in plaintiffs body. The medical review panel explains that “[ijnstrument counts are performed following closure because the act of closing the patient requires the use of more instruments that could be left in the body and those instruments also have to be accounted for.”
We find this is not a retained instrument case where an object is left in a patient’s body for an extended period of time following surgery and causes bodily injury necessitating a subsequent surgery or treatment. (Compare Romero v. Beilina, 01-274 (La.App. 5 Cir. 9/25/01), 798 So.2d 279, 282 (in which the plaintiff-patient sustained injuries caused by a sponge left in her body discovered months after surgery, resulting in severe abdominal pain and a subsequent surgery) and Davis v. Women and Children’s Hospital Lake Charles, 11-0318 (La.App. 3 Cir. 10/5/11), 74 So.3d 291 (in which unexplained drainage at the orig *460 inal incision site days after surgery resulted in a subsequent exploratory surgery, revealing a sponge left in the plaintiff-patient’s body)).
RAs to the alleged recalls of the tacker and mesh patch, plaintiff asserted in his opposition memorandum that defendants received notice of the recalls in December of 2005 by Federal Express letters.[6] However, these letters are not attached to his opposition memorandum nor are they placed in the record.[7] There is no evidence to support plaintiffs allegations that defendants had notice of any alleged recall at the time of plaintiffs surgery.[8]
We find that whether defendants breached the standard of care during plaintiffs surgery and whether such breach caused plaintiffs damages will require expert testimony to establish the standard of care in the use of the tacking device and number or type of staples appropriate for plaintiffs surgery, the placement and type of mesh patch appropriate for such surgery, and the proper procedure for instrument counts and instrument retrieval following surgery. Therefore, we conclude that this case is one which will require expert testimony and is “simply beyond the province of a lay person to assess without the aid of expert testimony.” Schultz v. Guoth, 57 So.3d at 1009.
Plaintiff alternatively claims that the doctrine of res ipsa loquitur applies in this case and therefore expert testimony is not necessary. The Louisiana Supreme Court has stated: *461 Linnear v. CenterPoint Energy Entex/Re-liant Energy, 06-3030 (La.9/5/07), 966 So.2d 36, 45.
*460 Res ipsa loquitur is a rule of circumstantial evidence which allows an inference of negligence on the part of the defendant if the facts indicate the defendant’s negligence, more probably than not, caused |flthe injury. It applies in cases involving circumstantial evidence, rather than direct evidence, provided the plaintiff establishes the following foundation of facts: (1) the injury is of the kind which does not ordinarily occur in the absence of negligence; (2) the evidence sufficiently eliminates other possible causes of the injury, such as the plaintiffs own responsibility or the responsibility of others; and (3) the alleged negligence of the defendant must fall within the scope of his duty to the plaintiff, which will often be the case if the defendant had exclusive control of the thing or situation that caused the injury to the plaintiff.
*461 Application of the res ipsa doctrine is not appropriate where specific acts of negligence are alleged and direct evidence is available to explain a reason for plaintiffs damages or the defendants’ actions. See Walston v. Lakeview Regional Medical Center, 99-1920 (La.App. 1 Cir. 9/22/00), 768 So.2d 238, 242. Further, application of the res ipsa doctrine “does not relieve the plaintiff of the ultimate burden of proving by a preponderance of the evidence all of the elements necessary for recovery.” Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654, 666 (La.1989). Moreover, “[i]n medical malpractice actions based on res ipsa loquitur, the plaintiff generally must use expert testimony to establish that the plaintiffs injury is a type which ordinarily would not occur in the absence of negligence.” Id. at 667.
In this case, plaintiff has alleged specific acts of negligence, ie., use of recalled equipment and failure to retrieve all instruments from his body during surgery, and there is direct evidence, such as witnesses’ testimony and medical records, available to explain what occurred during plaintiffs surgery. Further, we find that the evidence does not sufficiently eliminate other causes of injury, such as the responsibility of the tacker or mesh patch manufacturer. Accordingly, we find the doctrine of res ipsa loquitur does not apply to the facts of this case.
ImUpon review of the record, we find that defendants properly pointed out an absence of support for plaintiffs medical malpractice claim, ie., that plaintiff did not put forth any expert medical testimony to prove that defendants breached the standard of care in performing plaintiffs surgery. Thereafter, plaintiff failed to produce any medical expert testimony or opinion to support his claims.[9] Accordingly, we find the trial court correctly granted defendants’ motion for summary judgment in this case.
In his only assignment of error presented to this Court, plaintiff asserts that the trial court refused to allow him to introduce evidence to support his claims. The record does not support plaintiffs assertion. At the hearing on defendant’s motion for summary judgment, plaintiff informed the court that he had one staple removed from his abdomen and told the court, “if you’d like to take a look at it ... [,]” he would present from his coat pocket the actual staple removed from his abdomen. Plaintiff alleges that, at that time, the trial judge “shook her head negatively and lowely [sic] said ‘NO.’” Plaintiff argues that the trial judge’s response indicated that she would not accept any evidence at the hearing. Upon our review of the record, we find plaintiff did present documents in opposition to defendants’ motion for summary judgment and did not attempt to introduce any additional evidence at the summary judgment hearing. The record does not support plaintiffs as *462 sertion that the trial judge refused to allow plaintiff to present additional evidence. This assignment of error is without merit.

Jj¿CONCLUSION

Accordingly, for the reasons provided herein, we affirm the trial court’s judgment granting defendants’ motion for summary judgment.

AFFIRMED.

. A fixation device is commonly known as a staple gun.

. Defendants used a Bard Composix Extra Large Oval 7.7" x 9.7" mesh patch.

. Plaintiff alleges there are ten (10) "coiled” and ten (10) "straight” staples or constructs in his abdomen. Plaintiff asserts that he underwent an in-office procedure to remove one staple but that the others remain in his abdomen.

. Plaintiff also named as defendants: Jefferson Parish Hospital District No. 2 d/b/a/ East Jefferson General Hospital ("EJGH”); Dr. Mark Peters, EJGH president; all 19 members of EJGH's board of directors; anyone who occupied the operating room where his surgery took place during the eight hours prior to, or eight hours after, his surgery; four EJGH radiologists; Dr. Charles Eckert, an EJGH anesthesiologist; nine EJGH nurses; and Trey Stephens, an EJGH supplies vendor.

. Although plaintiff does not raise the argument on appeal, he asserted at the trial court level that his case is not a medical malpractice case under La. R.S. 9:2794. Rather, plaintiff argued that his case is a case of general negligence because he was not a "patient” of EJGH at the time of his surgery. Applying the Coteman factors to the facts of this case upon our de novo review, we find this case — arising out alleged damages sustained during a hernia repair surgery performed by plaintiff's treating physicians'— *459 clearly falls within the ambit of the Medical Malpractice Act pursuant to La. R.S. 9:2794. Coleman v. Deno, 01-1517 (La. 1/25/02), 813 So.2d 303.

. At the hearing on defendants’ motion for summary judgment, however, plaintiff stated that he believed defendants did not receive notice of the recall prior to his surgery.

. Plaintiff does provide a document entitled, "About Kugel Mesh Patches” indicating that the manufacturer of the Bard Composix Ku-gel Extra Large Oval 7.7" x 9.7" with the product code 0010208 recalled the patch in December of 2005 or January 2006. However, that document states that the recall only applied to those patches manufactured prior to December of 2006. Although plaintiff alleges that Dr. DeCorte testified in deposition that the mesh patch sat on a shelf for over a year before plaintiff's surgery, plaintiff failed to attach a certified copy of Dr. DeCorte's deposition or any other proof to show that the mesh patch used in plaintiffs surgery was in fact the recalled patch. The record reflects that plaintiff has settled a case in federal court for $250,000.00 against the manufacturer of the fixation device and indicates that he has a pending class action suit against the manufacturer of the Kugel mesh patch.

.The trial court previously granted summary judgment in favor of EJGH. In her Reasons for Judgment, the trial judge stated that EJGH provided evidence to show that the tacker and mesh patch used in plaintiff's surgery were not recalled at the time of the surgery and that plaintiff failed to put forth any evidence to show that any defendant had notice of the alleged recalls at the time of plaintiffs surgery.

. Plaintiff presented no medical expert testimony or opinion in his opposition to defendants’ motion for summary judgment. Defendants assert that plaintiff, in discovery, indicated that he would call Dr. Angie Sas-sard, a doctor in defendants’ practice, as an expert to support his claims. In support of their motion for summary judgment, however, defendants attached Dr. Angie Sassard’s affidavit, which stated that she did not participate in plaintiff's care or treatment and that she has no first-hand knowledge of the surgery at issue in this litigation. Dr. Sas-sard further attested that she will not testify that Drs. Guzzetta and DeCorte breached the standard of care in performing the surgery at issue.