WICKER, J.
*351 Plaintiff, Rico Lee, appeals the trial court judgment in favor of defendant, Pull-A-Part of New Orleans, LLC. For the following reasons, we affirm.
FACTUAL AND PROCEDURAL HISTORY
On April 27, 2016, plaintiff, Rico Lee, filed suit in the Twenty-Fourth Judicial District Court for the Parish of Jefferson against defendants, Pull-A-Part of New Orleans West, LLC and The Phoenix Insurance Company,[1] for damages arising out of an alleged August 13, 2015 accident. In his petition, plaintiff alleged that, while a customer at Pull-A-Part's vehicle yard in Harvey, he sustained personal injuries when the rear end of a Dodge pickup truck-propped up on rims to hold it in place-suddenly and without warning fell onto his foot.
The matter proceeded to trial before a twelve-person jury. At trial, plaintiff testified that, on August 13, 2015, he went to Pull-A-Part's vehicle yard, where he had been several times before, to obtain a part off of a pick-up truck. The yard had several vehicles lined up and propped up on rims, approximately three feet off of the ground. Plaintiff testified that he slid under a Dodge Ram pickup truck to obtain a part, but realized that he needed a certain tool before he could take the part off of the truck. He stated that, as he slid out from under the truck, he was waist-deep under the truck when he heard an "unh" sound. Plaintiff stated that the rear end of the truck suddenly and without warning fell onto his foot. Plaintiff testified that he never touched the truck and that his friend, Mervin Wright, accompanied him to the yard and witnessed the accident. He further stated that several Pull-A-Part employees observed him after the accident, and that one employee gave Mr. Wright a wind-up jack to manually raise the car off of plaintiff's foot. Plaintiff testified that EMS arrived to the scene and treated him with an ice pack.[2]
Plaintiff testified that he did not seek any further medical treatment on the date of the accident, but that his primary care physician, Dr. Ogbuokiri, examined him the following day. At some point, plaintiff went to the emergency room at University Medical Center for X-rays and testing. Plaintiff testified that he fractured his foot and wore a boot for several months. Plaintiff acknowledged that he had experienced foot pain prior to this accident, but that he had never received any medical treatment prior to this accident.
Dr. Godwin Ogbuokiri, the medical director for Downman Urgent HealthCare Clinic, testified as an expert in general medicine at trial.[3] Dr. Ogbuokiri testified that he examined plaintiff on August 14, 2015. Plaintiff reported to Dr. Ogbuokiri that the rear end of a vehicle landed on his foot the day prior and that he was "stuck" under the vehicle and struggled for six to *352 ten minutes thrashing about until others extricated him from under the vehicle. Dr. Ogbuokiri testified that plaintiff's foot appeared swollen, so he took an x-ray of his foot and told plaintiff that he had a nondisplaced fracture in his foot. Concerning his diagnosis of a nondisplaced fracture, Dr. Ogbuokiri testified, "I took caution. I was convinced that he was having a problem with his foot, and I wasn't really sure whether he have [sic] a fracture ...." Dr. Ogbuokiri put plaintiff's foot in a cast and sent him to the hospital for a more definitive study.[4] Dr. Ogbuokiri acknowledged that subsequent hospital records reflect that plaintiff did not in fact sustain any fracture to his foot. Dr. Ogbuokiri testified that plaintiff treated with him between a fourteen-month and two-year time period and that his medical bills totaled approximately $6,000.00.[5]
Dr. Fritz Fidele, a chiropractic physician with Plaza Medical Center[6] , treated plaintiff beginning January 4, 2017, at which time plaintiff complained of left foot pain and lower back pain and stiffness, through April 26, 2017. Dr. Fidele testified that plaintiff's foot had no visible signs of injury, such as swelling, at the time of his visit. However, plaintiff reported foot and back pain to Dr. Fidele and relayed that he had suffered a stroke as a result of stress related to the accident. Dr. Fidele testified that a technician with his office conducted a nerve conduction study and that Dr. Friedmann, a board-certified neurologist, reviewed the nerve conduction study results and found that plaintiff sustained nerve damage.[7] Dr. Fidele testified that plaintiff was subsequently examined on one occasion by Dr. Voorhies, a neurologist, who opined that plaintiff was not a surgical candidate but referred plaintiff back to an orthopedist for his complaints of foot pain.
Defendants presented the testimony of Dr. Michael Happel, a board certified neurologist with a specialty in electrodiagnostic testing.[8] Dr. Happel testified that he reviewed the EMS report from the date of the accident, which he stated documented "very little," as well as all of plaintiff's medical records from various providers, including the X-ray images taken of plaintiff's foot. Dr. Happel testified that the medical records reflect that plaintiff potentially sustained a slight contusion to his foot. He found that, given plaintiff's explanation of how the accident occurred, he *353 would expect plaintiff to have sustained a crushed bone or foot fracture from the described force.[9]
Mr. Joseph Bistes, Vice-President of Business Development for Pull-A-Part, testified at trial that he works in the company's corporate Atlanta office but previously worked in the Harvey yard for approximately three years. Mr. Bistes testified that Pull-A-Part is not classified as a junkyard but is a "very organized" used auto part retailer. He testified that the Harvey yard holds approximately 1200 vehicles, which are organized in rows according to manufacturer: General Motors; Ford; Dodge Chrysler Jeep; and imported vehicles.[10] Mr. Bistes testified that the vehicles are placed on "rims placed on stands, and they weld it everywhere it's touched ...." He further testified that, every morning, two or three employees, titled the "setting crew," walk the display yard and touch each individual car and, "literally try to knock it [each vehicle] off the stands."
At the conclusion of trial, the jury returned a verdict in favor of defendant, finding that Pull-A-Part was not negligent in causing or contributing to plaintiff's alleged accident or injuries.
DISCUSSION
On appeal, plaintiff first claims that the jury's verdict in defendant's favor was manifestly erroneous and should be overturned. Secondly, plaintiff contends that the trial court erred in failing to instruct the jury on the doctrine of res ipsa loquitur . Plaintiff asks this Court to vacate the trial court judgment and conduct a de novo review of the evidence presented and render judgment in his favor. Review of Jury Verdict Based on Evidence Presented
In this case, plaintiff claims that he was injured when a Dodge Ram pick-up truck, in the custody and control of defendant, Pull-A-Part, fell onto his foot resulting in injuries. The applicable law controlling damages caused by things in a defendant's custody is La. C.C. art. 2317.1, which provides:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
Thus, to prove liability for an unreasonably dangerous defect, a plaintiff has the burden to show that the thing was in the defendant's custody or control, it had a vice or defect that presented an unreasonable risk of harm, the defendant knew or should have known of the unreasonable risk of harm, and the damage was caused by the defect. La. C.C. art. 2317.1 ;
*354 Dauzat v. Thompson Constr. Co. , 02-989 (La. App. 5 Cir. 1/28/03), 839 So.2d 319. "The addition of the element of knowledge to article 2317.1 has effectively turned it from strict liability to a negligence claim." Wiltz v. Floor & Decor Outlets of Am. , 15-516 (La. App. 5 Cir. 2/24/16), 186 So.3d 1204, 1208 ; see also Monson v. Travelers Prop. & Cas. Ins. Co. , 06-921 (La. App. 5 Cir. 4/24/07), 955 So.2d 758, 761. Moreover, at trial, the fact-finder is afforded wide discretion in assessing the probative value of evidence and is free to accept or reject, in whole or in part, the testimony of any witness. Clark v. Simmons , 14-133 (La. App. 5 Cir. 12/23/14), 167 So.3d 140, 143.
At trial, plaintiff put forth no evidence concerning the alleged defect as required under La. C.C. art. 2317.1. Plaintiff did not point to any specific defect to the vehicle or the stand on which it was placed. Plaintiff failed to introduce any photographs of the vehicle or the allegedly defective stand, or present any expert or other testimony as to what may have caused the accident. Plaintiff was the only witness to testify as to how the accident allegedly occurred, despite the fact that he suggested numerous individuals were present during or immediately after the accident. Plaintiff claimed that his friend, Mr. Wright, witnessed the accident and used a manual jack to raise a Dodge Ram pick-up truck off of plaintiff's foot. Further, plaintiff testified that several Pull-A-Part employees arrived immediately after the accident. However, plaintiff failed to depose any of these witnesses prior to trial or call any of these witnesses at trial to corroborate his testimony concerning how the accident occurred.[11]
Contrarily, defendant presented Mr. Bistes' testimony discussing the set-up in the Harvey yard, including the vehicle rim stands, which are welded together, and Pull-A-Part's daily safety checks of each vehicle. Further, defendants presented the expert testimony of Dr. Happel, who testified that, had the accident occurred as plaintiff testified, he would expect plaintiff to have sustained a crushed bone or foot fracture. The medical testimony-although difficult to follow and not corroborated by any related medical records for reference-reflects that plaintiff was treated only with an ice pack immediately after the alleged accident and did not sustain any foot or ankle fracture.
Considering the irreconcilable medical testimony and lack of evidence surrounding the accident, we find that the jury was well within its discretion to find that plaintiff failed to meet his burden to prove that Pull-A-Part was negligent in causing plaintiff's alleged accident and injuries under La. C.C. art. 2317.1.
Res Ipsa Jury Charge
On appeal, plaintiff contends that the trial court erred in refusing to charge the jury on the doctrine of res ipsa loquitur . The Louisiana Supreme Court has described the doctrine of res ipsa loquitur as follows:
The doctrine of res ipsa loquitur involves the simple matter of a plaintiff's using circumstantial evidence to meet the burden of proof by a preponderance of the evidence. McCormick on Evidence § 342, at 966-67 (E. Cleary 3d ed. 1984). The doctrine merely assists the plaintiff in presenting a prima facie case of negligence when direct evidence is not *355 available. J. Lee & B. Lindahl, supra , § 1522 n. 4. The doctrine permits, but does not require, the trier of fact to infer negligence from the circumstances of the event. McCormick on Evidence, supra, § 342, at 967.
Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr., 564 So.2d 654, 665 (La. 1990).
Application of the res ipsa doctrine is not appropriate where specific acts of negligence are alleged and direct evidence is available to explain a reason for plaintiff's damages or the defendants' actions. Valence v. Jefferson Parish Hosp. Dist. No. 2 , 13-48 (La. App. 5 Cir. 10/30/13), 128 So.3d 455, 461. Further, application of the res ipsa doctrine does not relieve the plaintiff of the ultimate burden of proving by a preponderance of the evidence all of the elements necessary for recovery. Sandifer v. City of Kenner , 17-58 (La. App. 5 Cir. 5/31/17), 221 So.3d 307, 318.[12]
The record reflects that neither party submitted specific jury charges to the trial court. The record further reflects that, following the jury charge conference, the trial judge asked whether plaintiff's counsel objected to any of the court's jury charges, to which plaintiff's counsel objected only to the applicability of La. C.C. art. 2317.1. Plaintiff's counsel contended that La. C.C. arts. 2317 and 2317.1 do not apply to this case-without any suggestion as to what law counsel believed did apply under the facts of this case.[13] Under La. C.C.P. art. 1793, "[a] party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection." In order to preserve the right to appeal a trial court's failure to give a requested instruction or its giving of an erroneous instruction, a party must not only make a timely objection, but must state the grounds of the objection. Oregan v. Cashio , 16-563 (La. App. 5 Cir. 4/26/17), 220 So.3d 845, 854 (quotations omitted).
In the absence of an objection to the jury charges on the basis of the applicability of res ipsa loquitur , properly raised in the trial court, the issue has not been preserved for appellate review and we will not address it. See Semco, LLC v. Grand Ltd. , 16-342 (La. App. 5 Cir. 5/31/17), 221 So.3d 1004, 1037. Nevertheless, it appears, based upon our review of the record, that the trial court did charge the jury on the doctrine of res ipsa loquitur .[14]
*356 CONCLUSION
Accordingly, for the reasons provided herein, the trial court judgment is affirmed.
AFFIRMED

On June 16, 2016, plaintiff filed a supplemental and amended petition to name the proper insurer.

Plaintiff refused to go to the hospital with EMS.

The parties stipulated pre-trial to Dr. Ogbuokiri's qualifications as an expert in the field of general medicine.

Plaintiff subsequently complained of back pain, hip pain, and other injuries, which Dr. Ogbuokiri referred to as "delayed manifestation of injury." Dr. Ogbuokiri also suggested that plaintiff's back pain was "likely" related to the accident at issue and caused by a whiplash injury plaintiff sustained while struggling to extricate himself from under the vehicle. Dr. Ogbuokiri referenced a medical record which he stated reflects that plaintiff has a bulging or herniated lumbar disc. On cross-examination, defense counsel discussed hospital emergency room records from one year prior to the accident at issue where plaintiff complained of back pain. Dr. Ogbuokiri subsequently recommended that plaintiff obtain a lumbar MRI. The testimony is clear that plaintiff did not undergo the MRI testing when encouraged by Dr. Ogbuokiri, but plaintiff at some point did undergo a lumbar MRI. No medical records were introduced into evidence.

The length of treatment is not clear from the testimony, and plaintiff failed to introduce any medical records into evidence for review.

The parties stipulated to Dr. Fidele's expertise in chiropractic medicine.

Dr. Fidele testified that the neurologist is not physically present when the nerve conduction study is performed. Rather, a neurologist reviews the results after the testing is performed by a technician.

The parties stipulated at trial to Dr. Happel's qualifications as a board certified neurologist.

Dr. Happel also discussed plaintiff's lumbar MRI results and testified that the results reflected nothing abnormal for a forty-five year-old individual, and that he would not recommend any lumbar surgery based on the MRI results. Dr. Happel also discussed a report of prior back pain, a nerve conduction study, and other test results that plaintiff presumably underwent. However, the expert testimony in this record is unclear, as there are no written medical records in evidence to corroborate the testimony.

Mr. Bistes testified that the Harvey yard has approximately 20-24 employees. He stated that he did not contact the employees of the Harvey yard to question them about plaintiff's accident, indicating that he only spoke to Pull-A-Part's attorneys about the accident.

Although plaintiff contends the doctrine of res ipsa loquitur applies in this case, plaintiff failed to present any evidence, despite available eyewitness testimony, to prove his allegations. The doctrine of res ipsa loquitur does not relieve a plaintiff from the burden to put forth evidence to support his claim. Sandifer v. City of Kenner , 17-58 (La. App. 5 Cir. 5/31/17), 221 So.3d 307, 318.

Moreover, "[a] plaintiff's failure to obtain available direct evidence does not entitle him/her to the application of res ipsa loquitur ." Riggs v. Opelousas Gen. Hosp. Tr. Auth. , 08-591 (La. App. 3 Cir. 11/05/08), 997 So.2d 814, 818 (citing Linnear v. CenterPoint Energy Entex/Reliant Energy , 41,171, p. 10 (La. App. 2 Cir. 11/27/06), 945 So.2d 1, 22, reversed on other grounds , 06-3030 (La. 9/5/07), 966 So.2d 36.) Further, the Louisiana Supreme Court has instructed:
It is well settled that res ipsa loquitur , Latin for "the thing speaks for itself," is an evidentiary doctrine utilized when there has been a highly unusual act/occurrence; there is no direct evidence to suggest that a defendant's negligence brought about said act/occurrence; and yet, the circumstances surrounding the anomalous event (coupled with the defendant's connection to the unusual act/occurrence) allow the finder of fact to conclude that the defendant was negligent.
Lawson v. Mitsubishi Motor Sales of Am., Inc. , 05-0257 (La. 09/06/06), 938 So.2d 35, 43-44.

Plaintiff's counsel stated to the Court, "The Civil Code Article 2317 and 2317.1 does not-do not apply to this case .... I do know that Defense would like to have this-these statutes in the charges, but we vigorously object to it-to these articles for the fact that the vehicle was stacked on top of the rims."

Counsel did not object to the sufficiency of the res ipsa charge given on the record.